# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 19, 2006          Decided February 17, 2006

No. 05-5076

NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION
AFL-CIO AND
PROFESSIONAL AIRWAYS SYSTEMS SPECIALISTS, AFL-CIO,
APPELLANTS

v.

FEDERAL SERVICE IMPASSES PANEL AND
FEDERAL LABOR RELATIONS AUTHORITY,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00138)

*William W. Osborne, Jr.* argued the cause for appellants. With him on the briefs were *Debra L. Willen*, *Marguerite L. Graf*, and *Michael D. Derby*.

*James F. Blandford*, Attorney, Federal Labor Relations Authority, argued the cause for appellees. With him on the brief was *William R. Tobey*, Acting Solicitor.

*Andrew Steinberg*, Chief Counsel, Federal Aviation Administration, argued the cause for *amicus curiae* Federal Aviation Administration in support of the appellees. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, U.S. Department of Justice, *Kenneth L. Wainstein*, U.S. Attorney, *William G. Kanter* and *Edward Himmelfarb*, Attorneys, *Jeffrey A. Rosen*, General Counsel, U.S. Department of Transportation, and *Paul M. Geier*, Assistant General Counsel.

Before: GINSBURG, *Chief Judge*, RANDOLPH, *Circuit Judge,* and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Congress established a distinct regulatory framework for collective bargaining between federal agencies and their employees under the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2000). Within this statutory framework, the Federal Service Impasses Panel ("FSIP," "Impasses Panel," or "Panel") serves as a forum "of last resort in the speedy resolution of disputes" between a federal agency and the exclusive representatives of its employees "after negotiations have failed." *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1501 (D.C. Cir. 1984). Therefore, decisions of the FSIP generally are not subject to direct judicial review. *Id.* at 1498. A federal district court may exercise jurisdiction to review a Panel order only "in exceptional circumstances" as defined by *Leedom v. Kyne*, 358 U.S. 184 (1958), and its progeny. *Brewer*, 735 F.2d at 1500-01.

In 2003, contract negotiations between the Federal Aviation Administration ("FAA") and two of the unions representing its employees, the National Air Traffic Controllers Association, AFL-CIO ("NATCA"), and the Professional Airways Systems Specialists, AFL-CIO ("PASS"), broke down. In July 2003, the

Unions sought the assistance of the Panel. However, the FSIP declined to exercise jurisdiction over the bargaining impasses because, after receiving the parties' submissions, the Panel was uncertain whether it had the authority to resolve the disputes. The Unions then filed suit against the Panel and the Federal Labor Relations Authority ("FLRA" or "Authority") in District Court seeking declaratory and injunctive relief pursuant to *Leedom*. The District Court granted summary judgment to the defendants, concluding that it lacked jurisdiction to review the Panel's decision not to assert jurisdiction over the parties' collective bargaining disputes. The Unions have appealed. The FAA appears as *amicus curiae* in support of the Impasses Panel and the FLRA. We affirm.

*Leedom* provides an extremely limited exception to the nonreviewability of FSIP orders. In this case, the Unions have failed to demonstrate either of the predicates necessary for *Leedom* jurisdiction: The specific statutory provision identified by the Unions is not sufficiently "clear and mandatory" to require the Panel to exercise jurisdiction over these disputes, *Leedom*, 358 U.S. at 188, and the Unions have failed to show that, without the District Court's exercise of jurisdiction, they have no "meaningful and adequate means of vindicating [their] statutory rights," *Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).

### I. BACKGROUND

#### A. *The FSIP*

The Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 ("Chapter 71"), which was passed as part of the Civil Service Reform Act of 1978, governs "[l]abor relations within the federal civil service." *Dep't of Def. v. FLRA*, 659 F.2d 1140, 1144 (D.C. Cir. 1981). The FLRA is primarily responsible for administering the statute. 5 U.S.C. § 7105. Under Chapter 71, a federal agency and the exclusive

bargaining representatives of that agency's employees are required to negotiate in "good faith" over the subjects covered by the duty to bargain. *See* 5 U.S.C. § 7114(a)(4). Where negotiations fail to produce an accord, the statute provides for alternative dispute resolution processes. First, the parties may use the services of the Federal Mediation and Conciliation Service. 5 U.S.C. § 7119(a). Should mediation "fail to resolve a negotiation impasse . . . either party may request" the services of the FSIP, 5 U.S.C. § 7119(b), "an entity within the Authority, the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives" of their employees, 5 U.S.C. § 7119(c)(1). "[T]he parties may [also] agree to adopt a procedure for binding arbitration of the negotiation impasse, but only if the procedure is approved by the Panel." 5 U.S.C. § 7119(b)(2).

Upon submission of a request for Panel assistance, the Panel "shall promptly investigate any impasse presented to it." 5 U.S.C. § 7119(c)(5)(A). Once it has investigated, "[t]he Panel shall consider the impasse and shall either – (i) recommend to the parties procedures for the resolution of the impasse; or (ii) assist the parties in resolving the impasse through whatever methods and procedures . . . it may consider appropriate to accomplish the purpose of this section." 5 U.S.C. § 7119(c)(5)(A). The Panel has published regulations implementing § 7119. *See* 5 C.F.R. §§ 2470.1-2473.1 (2005). As relevant here, the regulations provide:

(a) Upon receipt of a request for consideration of an impasse, the Panel or its designee will promptly conduct an investigation, consulting when necessary with the parties and with any mediation service utilized. After due consideration, the Panel shall either:

(1) Decline to assert jurisdiction in the event that it finds that no impasse exists or that there is other

> good cause for not asserting jurisdiction, in whole or in part, and so advise the parties in writing, stating its reasons; or
>
> (2) Assert jurisdiction and
>
> > (i) Recommend to the parties procedures for the resolution of the impasse; and/or
> >
> > (ii) Assist the parties in resolving the impasse through whatever methods and procedures the Panel considers appropriate.

5 C.F.R. § 2471.6(a)(1), (2).

## B. *Congressional Restructuring of the FAA in the 1990s*

The FAA argues here, as before the Panel, that legislation passed by Congress in the mid-1990s withdrew the FSIP's jurisdiction as the final arbiter over disputes that arise between the FAA and its employees over compensation and benefits. First, with the enactment of the 1996 Department of Transportation and Related Agencies Appropriations Act ("1996 DOT Act"), Congress directed the FAA to establish its own personnel management system, exempt from many of the provisions of federal personnel laws. *See* 49 U.S.C. § 40122(g) (2000). Section 40122(g) is derived from § 347 of the 1996 DOT Act, Pub. L. No. 104-50, § 347, 109 Stat. 436, 460 (1995), and it now provides in relevant part that,

> [i]n consultation with the employees of the Administration and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of title 5 and other Federal personnel laws, the Administrator [of the FAA] shall develop and implement, not later than January 1, 1996, a personnel management system for the Administration that addresses the unique demands on the agency's workforce. Such a new system shall, at a minimum, provide for greater

flexibility in the hiring, training, compensation, and location of personnel.

49 U.S.C. § 40122(g)(1).

On March 28, 1996, the FAA issued its new Personnel Management System. The new system extended Chapter 71 protections to FAA employees:

The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71.

FAA Personnel Management System (Mar. 28, 1996) at 35, *reprinted in* Joint Appendix ("J.A.") 84. The FAA explained that, while Congress did not require that the new system conform to Chapter 71, "[t]he FAA has elected to continue the rights and benefits of union representation to our employees." *Id.* at ii, *reprinted in* J.A. 44. It is undisputed that the current version of the FAA Personnel Management System contains this same provision extending Chapter 71 protections to FAA employees.

On March 29, 1996, Congress amended § 347 to codify the agency's choice to extend Chapter 71 protections to FAA employees. H.R.J. Res. 170, Pub. L. No. 104-122, 110 Stat. 876 (1996) (codified as amended at 49 U.S.C. § 40122(g) (2000)). Section 347 now provides: "The provisions of title 5 shall not apply to the [FAA's] new personnel management system . . . with the exception of . . . chapter 71, relating to labor-management relations." 49 U.S.C. § 40122(g)(2)(C). The parties agree that none of these acts altered the Panel's jurisdiction to address collective bargaining impasses between the FAA and the Unions.

According to the FAA, "business as usual" changed when Congress enacted 49 U.S.C. § 106(*l*) in October 1996. The FAA argues that, "[u]nder 49 U.S.C. § 106(*l*), the FAA has the power to fix compensation for officers and employees, but its power to bargain over compensation and benefits is strictly limited." Br. for FAA as *Amicus Curiae* at 2. Section 106(*l*) states in relevant part:

> Except as provided in subsections (a) and (g) of section 40122, the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. In fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels.

49 U.S.C. § 106(*l*)(1). This provision was added as § 225 of the Air Traffic Management System Performance Improvement Act of 1996 ("1996 FAA Act"), enacted as Title II of the Federal Aviation Reauthorization Act of 1996, Pub. L. No. 104-264, tit. II, 110 Stat. 3213, 3232. The provision originally referred in its text to the uncodified version of § 40122(g), but was put in its current form in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, § 307(a), (c), 114 Stat. 61, 124-26 (2000).

The FAA points out that § 106(*l*)'s "invocation of section 40122(a) of title 49 incorporates a special process involving consultation, negotiation, mediation, and notification. If the parties cannot agree on compensation and benefits after consulting and negotiating, the Federal Mediation and Conciliation Service is brought in to help [the parties] reach an

agreement. Then, if the parties still cannot agree, the FAA is authorized to implement its proposed changes if it follows a procedure of notifying Congress and waiting a period of 60 days." Br. for FAA as *Amicus Curiae* at 3.

The parties disagree over the import of 49 U.S.C. § 106(*l*). The FAA argues that § 106(*l*) divests the FSIP of jurisdiction over bargaining impasses between the FAA and union bargaining agents with respect to "compensation and benefits." In other words, the agency claims that it is only required to bargain "to the extent provided for in section 40122(a)." And under § 40122(a)(2), the FAA cannot be required to use the services of the FSIP. The Unions disagree, pointing out that the first line of § 106(*l*) says "[e]xcept as provided in subsection[ ] . . . (g) of section 40122," and that § 40122(g) in turn expressly incorporates Chapter 71 bargaining rights. Neither the Panel nor the Authority has taken a position on the matter.

## C. *The 2003 Bargaining Impasses and the FSIP*

NATCA represents around 16,000 employees of the FAA. After a lengthy period of negotiating with the FAA on behalf of 11 bargaining units, involving approximately 1800 union members, the parties reached a bargaining impasse. When their attempt to reach resolution with the assistance of the Federal Mediation and Conciliation Service failed, NATCA filed a formal Request for Assistance from the Impasses Panel on July 8, 2003. During the same month, PASS filed a series of formal Requests for Assistance from the Panel when its efforts to negotiate with the FAA on behalf of four bargaining units, representing approximately 4000 FAA employees, had similarly stalled.

On September 22, 2003, the FAA responded by filing an objection to the FSIP's jurisdiction. Based on its interpretation of the provisions of the 1996 FAA Act, the FAA argued that the Unions' Requests for Assistance should be denied, because

Congress had decreed that disputes between the FAA and its unions concerning changes to the Personnel Management System should be directed, first, to the Federal Mediation and Conciliation Service, and then, if agreement cannot be reached, to Congress. The FSIP had no role to play, according to the FAA. In this case, the Federal Mediation and Conciliation Service procedure had been exhausted, so the proper remedy, the FAA argued, was for the FAA to make the required submission to Congress.

The Unions replied in turn that the FAA's construction of the 1996 FAA Act was wrong. The crux of the Unions' argument before the Panel was that 49 U.S.C. § 40122(a) governs procedures for negotiating changes to the Personnel Management System and that subsection (a) has no application in the context of recurring collective bargaining between the FAA and its unionized employees. And, further, according to the Unions, 49 U.S.C. § 40122(g) expressly confirms that Chapter 71, which governs labor-management relations, applies to collective bargaining disputes between the FAA and unions representing agency employees.

On January 9, 2004, the Panel issued its decisions. In each case, the Panel explained that "[a]fter due consideration of the request for assistance . . . the Panel in accordance with its regulations, 5 C.F.R. § 2471.6(a)(1), declines to assert jurisdiction because it is unclear whether the Panel has the authority to resolve the parties' impasse." *Department of Transportation, Federal Aviation Administration, Washington, DC and NATCA, AFL-CIO*, Case No. 03 FSIP 144 at 1 (Jan. 9, 2004), *reprinted in* J.A. 25 ("*NATCA Decision*"); *Department of Transportation, Federal Aviation Administration, Washington, DC and PASS, AFL-CIO*, Case Nos. 03 FSIP 149, 150, 151, and 157 at 1 (Jan. 9, 2004), *reprinted in* J.A. 29 ("*PASS Decision*"). The Panel found that the FAA "ha[d] raised arguable questions concerning whether the Panel has the authority to resolve

collective bargaining disputes over the compensation and benefits of FAA's bargaining-unit employees." *NATCA Decision* at 3, *reprinted in* J.A. 27; *PASS Decision* at 4, *reprinted in* J.A. 32. The Panel thus concluded that the various "statutory provisions subject to conflicting interpretations[ ] *must be addressed in an appropriate forum before the Panel commits its resources to assist the parties* in resolving the merits of their impasse." *NATCA Decision* at 4, *reprinted in* J.A. 28 (emphasis added); *accord PASS Decision* at 4, *reprinted in* J.A. 32. The Panel assured the parties that its determination would not prejudice any party's right to file another request for assistance should an appropriate forum determine that the FSIP indeed continues to have jurisdiction over collective bargaining disputes between the FAA and the Unions over compensation and benefits. *Id*. The FSIP's Letter to PASS added that its determination was neither an explicit nor implicit endorsement of the FAA's statutory interpretation. *See PASS Decision* at 4 n.4, *reprinted in* J.A. 32 n.4.

On January 30, 2004, the Unions filed suit against the FSIP and the Authority in the District Court. The Unions sought a declaration that the Panel's decisions violated its mandatory statutory duties under 5 U.S.C. § 7119 and thereby deprived NATCA, PASS, and the affected FAA employees of their statutory rights. *See Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, CA No. 04-138, 2005 WL 418016, at *2 (D.D.C. Feb. 22, 2005). The Unions also sought an order directing the Panel to provide assistance in resolving the Unions' impasses with the FAA. Apparently, that same day, in accordance with the procedures set forth in 49 U.S.C. § 40122(a)(2), the FAA submitted to Congress its final bargaining proposals for the 11 NATCA-represented units, together with a statement that it intended to impose the agency's proposed changes sixty days following the transmittal.

On February 22, 2005, the District Court granted summary judgment to the FSIP and the FLRA, holding that it lacked jurisdiction under *Leedom* to entertain the Unions' complaints. The Unions filed a timely notice of appeal on March 9, 2005. On June 10, 2005, the FAA notified NATCA that it intended to implement the terms and conditions of employment that the agency had submitted to Congress. Subsequent developments indicate that the dispute between NATCA and the FAA is now moot. The parties agree, however, that the dispute between PASS and the FAA is not moot, because bargaining between PASS and the FAA remains at an impasse, just where it was in 2003.

## II. ANALYSIS

An order of the FSIP is not reviewable "except in extraordinary circumstances," because "Congress precluded direct judicial review of Panel orders." *Brewer*, 735 F.2d at 1498. The Unions argue that this case presents an "extraordinary circumstance," because the FSIP had a *mandatory* statutory duty under 5 U.S.C. § 7119(c)(5) to assist the Unions and the FAA in resolving their collective bargaining impasses. The Unions also contend that there is nothing in the 1996 FAA Act or in the FAA Personnel Management System that divests the Panel of this mandatory statutory duty, so the Panel's refusal to address the parties' bargaining impasses was a flagrant abdication of its statutory duty. Thus, according to the Unions, the District Court plainly erred in declining to exercise jurisdiction under *Leedom*. Appellees respond that *Leedom* jurisdiction is not available in the instant case, because the Panel's determination not to assert jurisdiction was not a violation of a clear and mandatory statutory provision, and because the Unions can seek redress from the FLRA for any alleged wrongdoing in this case.

Ultimately, this case turns on the scope of *Leedom* jurisdiction. In *Leedom*, the relevant statute provided that the

National Labor Relations Board ("Board") "shall not . . . decide that any unit is appropriate for [collective bargaining] purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." 358 U.S. at 185 (internal quotation marks omitted). The statute was, thus, "clear and mandatory" with respect to the Board's obligations. *Id.* at 188. The Board nonetheless refused to allow professional employees to vote before certifying a bargaining unit that combined professional and nonprofessional employees. It was therefore clear that the Board had "attempted [to] exercise . . . power that had been specifically withheld." *Id.* at 189. Under these circumstances, the Court held that the federal district court had jurisdiction to set aside the certification, even though Board certification orders are interlocutory and, therefore, normally not subject to judicial review. *See id.* at 187, 191. The Court explained that it could not "lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." *Id.* at 190.

This so-called *Leedom* jurisdiction can apply in cases involving either negative or positive statutory commands. *Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 661-62 (D.C. Cir.) (en banc), *amended by* 38 F.3d 1224 (D.C. Cir. 1994). However, "[t]he invocation of *Leedom* jurisdiction, we have emphasized, is extraordinary." *Ass'n of Civilian Technicians v. FLRA*, 283 F.3d 339, 344 (D.C. Cir. 2002) (internal citation and quotation marks omitted). This point cannot be overstated, because, as the parties in this case recognize, *Leedom* jurisdiction is extremely narrow in scope.

The Court in *Leedom* held that the district court had jurisdiction because the Board's order was "in excess of its delegated powers and contrary to a specific prohibition in the [National Labor Relations] Act," which "[was] clear and

mandatory," 358 U.S. at 188, and the "'absence of jurisdiction of the federal courts' would [have] mean[t] 'a sacrifice or obliteration of a right which Congress' ha[d] given," *id.* at 190. And "'[c]entral' to the decision in *Leedom*, the Court has since explained, was the understanding that barring district court review would have 'wholly deprive[d] the union of a meaningful and adequate means of vindicating its statutory rights,'" because the union's members had "'no other means, within their control'" of obtaining judicial review." *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 874 (D.C. Cir. 2002) (citing *MCorp*, 502 U.S. at 43) (second alteration in original). Thus, in order to justify the exercise of *Leedom* jurisdiction, a plaintiff must show, *first*, that the agency has acted "in excess of its delegated powers and contrary to a specific prohibition" which "is clear and mandatory," *Leedom*, 358 U.S. at 188, and, *second*, that barring review by the district court "would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights," *MCorp*, 502 U.S. at 43. The Unions have not satisfied these requirements in this case.

## A. *The Statutory Duty Is Not "Clear and Mandatory" in this Case*

In arguing that the FSIP had a mandatory duty to assert jurisdiction over the parties' bargaining impasses, the Unions claim that the Panel's statutory impasse-resolution role is mandatory: Congress has expressly declared that the Impasses Panel "shall promptly investigate any impasse presented to it[,] . . . shall consider the impasse and shall either – (i) recommend to the parties procedures for the resolution of the impasse; or (ii) assist the parties in resolving the impasse." 5 U.S.C. § 7119(c)(5)(A). Therefore, according to the Unions, the FSIP could not decline jurisdiction on the grounds that it was "unclear" as to whether the Panel had authority to assist in the resolution of the parties' impasses.

The FSIP responds that its refusal to assist the parties in this case did not violate 5 U.S.C. § 7119(c)(5)(A), because both the statute and common sense dictate that, before exercising any purported authority, the Panel should assure itself that a collective bargaining dispute is within its jurisdiction. Indeed, the Panel notes that its regulations clearly permit the FSIP to "[d]ecline to assert jurisdiction in the event that it finds that no impasse exists or that there is other good cause for not asserting jurisdiction." 5 C.F.R. § 2471.6(a)(1). The Panel also claims that, consistent with longstanding practice, the FSIP often declines to assist in the resolution of parties' bargaining impasses when the Panel's jurisdiction is uncertain.

As noted above, the FAA has taken the position, both before the FSIP and in this court, that 49 U.S.C. §§ 106(*l*) and 40122(a) divest the Panel of jurisdiction over collective bargaining disputes between the FAA and its unionized employees over compensation and benefits. And the Unions, as noted above, have consistently maintained that the FAA's position is plainly wrong, because nothing in the 1996 FAA Act abrogates Chapter 71's applicability to collective bargaining between the FAA and the Unions, and thus nothing in that Act changes the Impasses Panel's mandatory jurisdiction over collective bargaining impasses between the FAA and the Unions. Rather, according to the Unions, § 40122(a) only governs the process of "developing and making changes to the personnel management system," 49 U.S.C. § 40122(a)(1), not changes to collective bargaining agreements. And § 40122(g) and the FAA's Personnel Management System expressly provide that the process of collective bargaining between the FAA and the exclusive bargaining representatives of its employees is to be governed by Chapter 71 on the same terms as that statute governs the process of collective bargaining between all other federal agencies and the representatives of their employees. In other words, the Unions contend that § 40122(a) does not

purport to override § 40122(g), and that §106(*l*) is not to the contrary when read as a whole.

Both the FAA and the Unions have raised compelling arguments regarding the proper interpretation of the disputed statutory provisions. It is precisely because of this that we cannot conclude that the Panel's decisions in this case contravened a clear and specific statutory mandate, as required by *Leedom*. *See* 358 U.S. at 188. On the record before us, it appears that the Panel reasonably questioned whether it had jurisdiction to act. Therefore, it cannot be said that the FSIP violated "a specific and unambiguous statutory directive." *United Food & Commercial Workers, Local 400 v. NLRB*, 694 F.2d 276, 278 (D.C. Cir. 1982) (per curiam).

**B.** ***The Unions Have a Meaningful and Adequate Means of Vindicating Their Alleged Statutory Rights***

Even if the Unions' view of the Panel's jurisdiction is correct, they still could not assert jurisdiction under *Leedom,* because they have not been "wholly deprive[d] . . . of a meaningful and adequate means of vindicating [their alleged] statutory rights." *MCorp*, 502 U.S. at 43. The brief to this court submitted on behalf of the FSIP and the FLRA strenuously contends that the Unions' grievances in this case should be presented to and addressed by the FLRA. We agree. If their claims have merit, the Unions can vindicate their statutory rights and gain appropriate redress before the FLRA.

In all of its arguments – to the FSIP and to this court – the FAA has made it clear that, in its view, it has no duty to participate in proceedings before the Panel to resolve collective bargaining impasses between the agency and the Unions. In other words, the FAA has refused to bargain under the auspices of the Panel, because it believes that the agency has no legal obligation to submit to the FSIP's jurisdiction in matters involving compensation and benefits of FAA employees. If the

FAA's proffered interpretation of the relevant statutes is wrong, then the agency's declaration that it will not appear before the FSIP is undoubtedly an unfair labor practice.

An agency engages in an unfair labor practice when it "refuse[s] to consult or negotiate in good faith with a labor organization as required by [Chapter 71]." 5 U.S.C. § 7116(a)(5). Because "it 'is well established that the procedures of the Panel are part of the collective bargaining process,'" *Am. Fed'n of Gov't Employees v. FLRA*, 778 F.2d 850, 855 (D.C. Cir. 1985) ("*AFGE*") (internal citation omitted), the obligation to bargain under the statute obviously includes participation in proceedings before the FSIP.

Furthermore, the FLRA has held that, where an agency has a duty to negotiate, a unilateral change in conditions of employment is a refusal to consult or negotiate in good faith and thus an unfair labor practice. *See, e.g.*, *Fed. Bureau of Prisons, Fed. Corr. Inst. Bastrop, Tex.*, 55 F.L.R.A. 848, 852 (1999). Therefore, if the FAA refuses to participate in proceedings before the Panel to resolve collective bargaining impasses between the agency and the Unions and then unilaterally implements its proposals, the Unions will have an additional basis for asserting unfair labor practice charges before the FLRA.

In short, if the Unions' interpretation of the disputed statutory provisions is correct, then it is clear that they have viable unfair labor practice charges that can be raised with and addressed by the FLRA. Thus, the Unions are not without possible redress for the alleged violations of their statutory rights.

It is also clear that any alleged unfair labor practices must be addressed in the first instance by the FLRA – not by the FSIP, the District Court, or this court. *See AFGE*, 778 F.2d at 854 (explaining that "[t]he Authority has held that" Chapter 71's

grant of jurisdiction to the FLRA to resolve issues regarding a party's duty to bargain in good faith "preclude[s] the Impasses Panel from considering negotiability issues"); *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 966 (D.C. Cir. 1990) (finding that the "district judge improperly interjected the federal judiciary, at a premature stage into [Chapter 71's] carefully developed system of administrative review," by adjudicating the parties' dispute before an unfair labor practice charge had been filed with the Authority); *EEOC v. FLRA*, 476 U.S. 19, 23 (1986) (per curiam) (agreeing that except in extraordinary circumstances the Courts of Appeals are without jurisdiction to consider an issue not raised before the FLRA). Matters such as statutory unfair labor practice charges, which are properly within the jurisdiction of the FLRA, should be addressed by the Authority in the first instance to allow it to "bring[ ] its expertise to bear on the resolution of those issues." *EEOC v. FLRA*, 476 U.S. at 23.

## III. CONCLUSION

For the reasons stated in this opinion, the judgment of the District Court is hereby affirmed.

*So ordered.*