Affirmed by published opinion. Judge DUNCAN wrote the opinion, in which Judge JACKSON joined. Chief Judge WILLIAMS wrote a separate opinion concurring in part and dissenting in part and concurring in the judgment.
OPINION
DUNCAN, Circuit Judge:
Long Term Care Partners, LLC (“LTC Partners”) challenges the assumption of jurisdiction by the Equal Employment Opportunity Commission (“EEOC” or “Commission”) over actions brought by federal employees against the Office of Personnel Management (“OPM”) arising from OPM’s participation in an allegedly discriminatory contract with LTC Partners. The district court dismissed LTC Partners’ claim, holding that the limited exception to the finality requirement for review of administrative agency action outlined in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), did not apply. We agree and therefore affirm.
I.
Congress enacted the Long-Term Care Security Act (“LTCSA”), 5 U.S.C. *228 §§ 9001-9009, to provide long-term care insurance to eligible individuals, including federal employees, their qualified relatives, and annuitants. OPM effectuated the mandate of the LTCSA by establishing the Federal Long Term Care Insurance Program (“Program”), 5 C.F.R. pt. 875, contracting thereunder with “qualified carriers” for the provision of long-term care insurance, and regulating certain aspects of the insurers’ operations. See §§ 9001-9003, 9008. Under the Program, OPM and a qualified carrier enter into a “master contract” that delineates the benefits, premiums and other terms and conditions of the insurance policies issued by the carrier. § 9003.
The Program does not provide universal coverage. § 9002(e)(3). Instead, each individual must apply for coverage using a form prescribed by the carrier and approved by OPM. 5 C.F.R. § 875.401(a). The carrier has discretion, within the limits set forth in the master contract, to accept or reject applications. 5 U.S.C. § 9003(c); 5 C.F.R. § 875.407.[1] The carrier’s eligibility determinations are subject to review “only to the extent and in the manner provided in the applicable master contract.” 5 U.S.C. § 9003(c)(2). Notwithstanding this, a limited right to judicial review of the carrier’s eligibility determinations exists, provided the applicant has exhausted the administrative remedies set forth in the master contract. 5 U.S.C. § 9007. Unlike the role of the carrier, OPM’s role in the administration of the Program is limited. 5 C.F.R. §§ 875.106, .107. OPM does not make insurability decisions, and the regulations prohibit applicants from appealing carriers’ insurability decisions to OPM. 5 C.F.R. § 875.407.
Pursuant to its authority under the LTCSA, OPM entered into a master contract with LTC Partners, a consortium created by John Hancock Life Insurance Company and Metropolitan Life Insurance Company.[2] The master contract sets forth LTC Partners’ internal administrative appeals process as the only avenue for appeal of an insurability determination. An applicant denied coverage can submit the denial letter to his or her physician, who in turn can respond in writing to the specific bases for the denial. Upon receipt of a physician’s letter, LTC Partners’ underwriting staff reconsiders the original denial and issues a second decision. An applicant denied coverage at this stage can obtain an additional de novo review within LTC Partners.[3] Following exhaustion of these administrative remedies, a still-aggrieved applicant may file suit against the carrier in federal district court.
In July 2002, Ralph D. Rouse, Jr., a federal employee, submitted an application for insurance to LTC Partners. The application form, designed by LTC Partners and approved by OPM, required applicants to indicate whether they used “medical devices, aids, or treatments,” and listed wheelchairs as a specific example. J.A. 256. The form stated that an affirmative response to the “medical devices, aids, or *229 treatments” question would render the applicant ineligible for coverage. Rouse, a paraplegic who used a wheelchair, responded to the question in the affirmative. Accordingly, LTC Partners denied Rouse coverage based on his use of a wheelchair, J.A. 263-64, and upheld the denial on reconsideration, J.A. 268.[4] Instead of filing a complaint against the carrier in federal district court, as was his right under 5 U.S.C. § 9007, Rouse filed a formal EEOC administrative complaint against OPM as the agency administering the Program. In his complaint, Rouse alleged that OPM’s contractual arrangement with LTC Partners, under which Rouse was denied long-term care insurance coverage, constituted unlawful discrimination by the agency-
In proceedings before an EEOC Administrative Law Judge (“ALJ”), OPM argued that Rouse’s complaint should be dismissed because the EEOC did not have jurisdiction to review LTC Partners’ insur-ability decision. The ALJ rejected this argument, finding that it “confuse[d] jurisdiction under the Americans with Disabilities Act (ADA) with eligibility determinations under the LTCSA” and holding that “the Commission has jurisdiction under the ADA to determine whether OPM has participated in a contract which makes disability-based distinctions in the eligibility requirements of its insurance plan.” Rouse v. Director, Office of Personnel Management, Case No. 100-2005-00025X (E.E.O.C. October 27, 2005) (order denying OPM’s motion to dismiss); J.A. 106-07. Under relevant sections of the ADA, OPM is prohibited from
participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity’s qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs)!.]
42 U.S.C. § 12112(b)(2). The EEOC had jurisdiction to determine whether OPM discriminated against Rouse under this section of the ADA, the ALJ determined, despite the limitations on review of LTC Partners’ insurability decisions set forth in the LTCSA and the master contract.[5]
In two subsequent appeals, the EEOC has reinforced its view of the limited extent to which it may exercise jurisdiction in cases like Rouse. See Fornaro v. Blair, E.E.O.C. Doc. 01A53949, 2005 WL 3038227 (November 2, 2005), recons, denied sub nom. Fornaro v. Springer, E.E.O.C. Doc. 0520060303, 2007 WL 1661122 (May 24, 2007); James v. Springer, E.E.O.C. Doc. 0120054026, 2007 WL 1393631 (May 3, 2007); recons, denied, E.E.O.C. Doc. 0520070615, 2007 WL 2416692 (August 16, 2007). In each of these cases, the EEOC’s Office of Federal Operations (“OFO”) rejected OPM’s argument that the aggrieved Program applicant’s complaint was an impermissible collateral attack on an unfavorable insurance decision. In doing so, the *230 OFO distinguished between challenges to individual coverage determinations and the propriety of the overarching contract as articulated by the statute: “Congress intended that contractual relationships of a covered employer be scrutinized for whether they discriminate against its employees who are individuals with disabilities within the meaning of the law.” James, 2007 WL 1393631, at *3; see also Fornaro, 2005 WL 3038227, at *2. The OFO found “no indication in [the] language or in the legislative history [of the LTCSA] that Congress intended to authorize OPM to dispense with its non-discriminatory obligations under civil rights statutes.” James, 2007 WL 1393631, at *4; see also Fornaro, 2005 WL 3038227, at *2. The OFO found that “OPM, in its contractual relationship with [LTC Partners] for the provision of this insurance, is the proper party responsible for ensuring that its contract adheres to non-discrimination statutes.” James, 2007 WL 1393631, at *4. Finding EEOC jurisdiction appropriate in each case, the OFO remanded the claims for processing by the agency.[6]
On February 23, 2006, LTC Partners filed suit against the United States in federal district court. The complaint, as later amended, alleged that the EEOC had asserted jurisdiction over LTC Partners’ in-surability decisions in contravention of the LTCSA and its implementing regulations. LTC Partners sought (1) a declaration that the EEOC was without jurisdiction to review insurability decisions made under the Program, and (2) a permanent injunction preventing the EEOC from asserting such jurisdiction.[7] The district court dismissed LTC Partners’ challenge to the EEOC’s assertion of jurisdiction, holding that the decision to entertain such matters was not “final agency action” under the Administrative Procedure Act (“APA”) and did not fit the limited finality exception outlined in Leedom.[8]
II.
On appeal, the government first contends that LTC Partners lacks standing to challenge the EEOC’s exercise of jurisdiction over its contractual partner, OPM. The district court did not reach this issue. However, standing implicates this court’s subject matter jurisdiction, and it may therefore be appropriately considered on appeal. Fed.R.Civ.P. 12(h)(3); see Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548-49 (4th Cir.2006). To satisfy the standing requirement of the *231 case-or-controversy limitation on judicial authority found in Article III, Section 2 of the Constitution, the party invoking federal court jurisdiction must show that (1) it has suffered an injury in fact, (2) the injury is fairly traceable to the defendants’ actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); see also Friends of the Earth, Inc. v. Ga-ston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir.2000) (en banc). To meet the first requirement, the party must demonstrate an “injury in fact” that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical. Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130. “The standing requirement is designed to guarantee that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate.” Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 298 (4th Cir.2005) (internal quotations omitted).
LTC Partners claims injury based on the EEOC’s exercise of jurisdiction over its contractual partner, OPM. LTC Partners argues that this exercise of jurisdiction guts its right to enjoy the limitations on review imposed by the LTCSA; forces it to expend resources on administrative litigation whether or not it is a party to the proceedings; and imperils the contract through the threat of an adverse ruling on the merits against OPM in the pending EEOC actions. The government responds by noting that EEOC decisions on the merits in Fornaro and James would operate only against OPM, arguing that any projected downstream effects of such rulings on LTC Partners are too conjectural or hypothetical to confer Article III standing.[9]
Notwithstanding the government’s invocation of standing concerns, we decline, as did the district court, to decide this case on standing grounds. This court previously determined that analysis of whether a case presents “final agency action” should precede a standing inquiry. Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA 313 F.3d 852, 857 (4th Cir.2002). We reasoned that the doctrine of constitutional avoidance requires us to eschew determinations of Article III standing, a constitutional question, in cases in which a statutory jurisdictional inquiry could dictate the result. Id. (citing Ashwander v. Tenn. Valley Autk, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring) (“It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.”) (internal quotations omitted)).
The continued validity of this portion of the decision in Flue-Cured Tobacco has *232 been called into question somewhat by Arbaugh v. Y&H Corp., 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). In Arbaugh, the Supreme Court considered the provision of Title VII limiting its applicability to businesses over a certain size. Id. at 504-05, 126 S.Ct. 1235 (citing 42 U.S.C. § 2000e(b) (defining “employer” to include only those entities having “fifteen or more employees”)). The district court had determined, after trial, and on the employer’s motion, that it lacked subject matter jurisdiction because the defendant employed fewer than fifteen employees, and consequently dismissed the case. The Fifth Circuit affirmed. The Supreme Court reversed, noting that the statutory provision at issue did not speak in jurisdictional terms, and concluding that the factual issue of whether the defendant had fifteen or more employees was not a jurisdictional limitation but an element of the claim for relief. Id. at 513-16, 126 S.Ct. 1235. The Court explained, “[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.” Id. at 516, 126 S.Ct. 1235. Cf. Partington v. Am. Int’l Specialty Lines Ins. Co., 443 F.3d 334, 338-39 (4th Cir.2006) (applying Arbaugh and finding that the district court properly exercised jurisdiction in a case involving alleged violations of the Securities Act of 1933).
Relying on Arbaugh, the Court of Appeals for the District of Columbia has held that the requirement of final agency action under section 10(c) of the APA, 5 U.S.C. § 704, is not jurisdictional. Trudeau v. FTC, 456 F.3d 178, 183-84 & nn. 6-7 (D.C.Cir.2006); see also Nulankeyutmo-nen Nkihtaqmikon v. Impson, 503 F.3d 18, 33 (1st Cir.2007) (reaffirming the court’s pre-Arbaugh determination that the APA’s finality requirement is not jurisdictional). We assume without deciding that the Arbaugh rule applies equally to statutory “final agency action” under the APA and non-statutory inquiries under Leedom, rendering both nonjurisdictional.
Nevertheless, the Supreme Court recently clarified, relying on Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 100-101, n. 3, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), that “a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.” Sinochem Int’l Co. v. Malaysia Int’l Shipping Corp., — U.S. -, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007) (internal quotations omitted). “[Jjurisdiction is vital only if the court proposes to issue a judgment on the merits.” Id. at 1191-92 (alteration in original) (internal quotations omitted). In Sino-chem, the Court determined that a federal court could properly dismiss a case under the forum non conveniens doctrine without first resolving the threshold jurisdictional issues. The Court reasoned that a forum non conveniens dismissal might be appropriate, notwithstanding the presence of unresolved jurisdictional issues, because such a dismissal “denfies] audience to a case on the merits” and “is a determination that the merits should be adjudicated elsewhere.” Id. at 1192 (alteration in original) (internal quotations omitted). The Court listed by way of example other legal issues that could also be addressed without first deciding whether a case presented an Article III case or controversy. Id. at 1191 (pointing to abstention under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and dismissal of certain suits against the government under Totten v. United States, 92 U.S. 105, 23 L.Ed. 605 (1876)).
Thus, under Sinochem, it is of no moment whether Arbaugh renders our Lee *233 dom inquiry nonjurisdictional. Our Leedom analysis requires no more than “a brush with factual and legal issues of the underlying dispute” and “does not entail any assumption by the court of substantive law-declaring power.” Sinochem, 127 S.Ct. at 1192-93 (internal quotations omitted). Our consideration of Leedom, infra, weighs heavily in favor of dismissal, whereas the standing issue here would be difficult to resolve. Under these circumstances, Sinochem counsels us to “take[] the less burdensome course,” 127 S.Ct. at 1194, and decide the case on Leedom grounds without first surmounting the jurisdictional hurdle of standing. See Ashwander, 297 U.S. at 347, 56 S.Ct. 466 (Brandéis, J., concurring) (“It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.”) (internal quotations omitted). We therefore decide this case on the basis of our analysis of LTC Partners’ Leedom argument, to which we now turn.
III.
Judicial review under the APA is limited to “final agency action for which there is no other adequate remedy in a court.” 5 U.S.C. § 704.[10] In Leedom, the Supreme Court recognized a nonstatutory exception to the § 704 finality requirement in cases in which agencies act outside the scope of their delegated powers and contrary to “clear and mandatory” statutory prohibitions. 358 U.S. at 188-90, 79 S.Ct. 180. The finality exception in Leedom is limited; it is properly invoked only where the absence of federal court jurisdiction over an agency action “would wholly deprive” the aggrieved party “of a meaningful and adequate means of vindicating its statutory rights.” Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 43, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991).
LTC Partners claims that this case fits both criteria for exercise of Leedom jurisdiction and that the district court erred by holding otherwise. First, LTC Partners argues that the EEOC, in exercising jurisdiction in Rouse, Fornaro, and James, acted contrary to the LTCSA’s clear and mandatory prohibition of review of carriers’ eligibility determinations except “to the extent and in the manner provided in the applicable master contract.” 5 U.S.C. § 9003(c)(2). LTC Partners asserts that the second Leedom requirement is also met in this case because it has no meaningful and adequate means, apart from this litigation, of vindicating its perceived right under § 9003 and the master contract not to be forced to defend its insurability decisions before the EEOC. See MCorp, 502 U.S. at 43, 112 S.Ct. 459. We review de novo the district court’s dismissal of this claim. Suter v. United States, 441 F.3d 306, 310 (4th Cir.2006).
A.
We begin by examining LTC Partners’ argument that the EEOC acted contrary to a clear and mandatory requirement in the LTCSA. In Leedom, the Supreme Court construed a statute dealing with the certification of collective bargaining units by the National Labor Relations Board (“NLRB”). The statute provided that the NLRB “shall not ... decide that any unit is appropriate for [collective bargaining] purposes if such unit includes both professional employees and employees who are not professional *234 employees unless a majority of such professional employees vote for inclusion in such unit.” Leedom, 358 U.S. at 184-85, 79 S.Ct. 180 (citing National Labor Relations Act § 9(b)(1), 29 U.S.C. § 159(b)(1)). In spite of this prohibition, the NLRB issued an order certifying a unit for collective bargaining purposes that included both professional and non-professional employees, without obtaining the professional employees’ consent. Id. at 186, 79 S.Ct. 180. The Court held that the Board had acted “in excess of its delegated powers and contrary to a specific prohibition in the Act” that was “clear and mandatory,” stating that such action was “[p]lainly ... an attempted exercise of power that had been specifically withheld.” Id. at 188-89, 79 S.Ct. 180. Under those circumstances, the Court held, the district court had jurisdiction to entertain the suit. Id. at 190-91, 79 S.Ct. 180 (“This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers.”).
The Supreme Court has since reinforced the “narrow limits” of Leedom. See Boire v. Greyhound Corp., 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). We have therefore construed the exception accordingly, finding Leedom jurisdiction appropriate only where there is a “strong and clear demonstration that a clear, specific and mandatory [statutory provision] has been violated.” Newport News Shipbuilding and Dry Dock Co. v. NLRB, 633 F.2d 1079, 1081 (4th Cir.1980) (internal quotations omitted). When a party invokes Leedom as the basis for this court’s jurisdiction, we conduct a “cursory review of the merits” to determine if the agency acted “clearly beyond the boundaries of its authority.” Champion Int’l Corp. v. ERA, 850 F.2d 182, 186 (4th Cir.1988). If the agency offered a “plausible” interpretation of the relevant statute, we will find that it did not “violate a clear statutory mandate,” Hanauer v. Reich, 82 F.3d 1304, 1311 (4th Cir.1996), and Leedom jurisdiction will not lie. See also Nat’l Air Traffic Controllers Ass’n AFL-CIO v. Fed. Serv. Impasses Panel, 437 F.3d 1256, 1264 (D.C.Cir.2006) (holding, where both parties on appeal “raised compelling arguments regarding the proper interpretation of the disputed statutory provisions,” that it was precisely this fact that compelled the court to find that there had been no violation of a clear and specific statutory directive).
In this case, the statute provides, “A carrier’s determination as to whether or not a particular individual is eligible to obtain long-term care insurance coverage under this chapter shall be subject to review only to the extent and in the manner provided in the applicable master contract.” 5 U.S.C. § 9003(c)(2). LTC Partners argues that in exercising jurisdiction over cases brought by federal employees aggrieved by LTC Partners’ eligibility determinations, the EEOC violated the clear, specific, and mandatory prohibition of 5 U.S.C. § 9003. See id. (“A carrier’s [eligibility] determination[s] ... shall be subject to review only [as] provided in the applicable master contract.”) (emphasis added). There is no serious dispute about the mandatory nature of this provision or that it is specific and clear as it pertains to carriers’ eligibility determinations. The EEOC has repeatedly drawn a line, however, between review of carriers’ eligibility determinations and scrutiny of OPM’s participation in a contractual relationship that has the alleged effect of discriminating against federal employees. The question before us is whether the distinction drawn by the agency is a reasonable one. In deciding it, we need not reach the ultimate *235 merits of the EEOC’s position. Rather, our Leedom inquiry is aimed at the more basic question of whether there is a “strong and clear demonstration” of a violation of a clear, specific and mandatory statutory provision, or whether the agency’s view, while perhaps not compelling beyond cavil, is nevertheless “plausible.” Newport News, 633 F.2d at 1081 (internal quotations omitted).
Rouse, Fomaro, and James reflect the EEOC’s determination that although § 9003 clearly and specifically prohibits review of LTC Partners’ eligibility determinations, it does nothing to inhibit EEOC review of OPM’s participation in allegedly discriminatory contractual relationships. The EEOC OFO has espoused the view that the latter inquiry is governed by the ADA, 42 U.S.C. § 12112(b)(2), and is unaffected by the specific prohibition in the LTCSA, 5 U.S.C. § 9003(c)(2). To hold otherwise, the OFO found, “would be to allow [OPM] to potentially enter into any contract term which violates federal law or discriminates against whole groups of individuals on the basis of their protected class.” Fornaro, 2005 WL 3038227, at *2.
LTC Partners argues in response that review of its eligibility decisions and scrutiny of the master-contract terms require the same ultimate inquiry: whether a claimant was subjected to discrimination based on disability when he was denied coverage under the Program. According to LTC Partners, this broad inquiry and all of its component parts are foreclosed to anyone but LTC Partners under the LTCSA, 5 U.S.C. § 9003(c)(2). By asserting jurisdiction to review OPM’s participation in the master contract, LTC Partners concludes, the EEOC is engaging in the prohibited act of reviewing its insura-bility determinations.
This argument is severely undercut by provisions of the ADA protecting insurers’ risk-based eligibility judgments. Such judgments are insulated from scrutiny so long as they are not “used as a subterfuge to evade the purposes of [the ADA].” 42 U.S.C. § 12201(c). The OFO has recognized that these statutory provisions render the EEOC powerless to overturn insurers’ decisions “strictly concerning an individual’s ‘insurability.’ ” Fornaro, 2005 WL 3038227, at *2. However, a separate ADA provision governs agency discrimination via participation in suspect contractual relationships. See 42 U.S.C. § 12112(b)(2). Because the line drawn by the OFO parallels and arises in part from a delineation in the United States Code, it would be difficult to conclude that the distinction between review of insurability decisions and scrutiny of an agency’s contractual relationships is simply the wayward creation of a self-aggrandizing administrative agency.
The court below found merit in the EEOC’s distinction between review of an individual eligibility determination and what the court characterized as the “macro issue” in the case — review of OPM’s participation in an allegedly discriminatory contractual relationship. As a result, the court concluded that the record before it contained no clear indication that the EEOC had acted beyond its jurisdiction.
We agree with the conclusion urged by the government and reached by the district court. The distinction drawn in the EEOC cases may not be compelled, but it is certainly a “plausible” one, reached upon sound analysis after thorough inquiry, and grounded in the language of the ADA. See Hanauer, 82 F.3d at 1311. The provision relied on by LTC Partners clearly prohibits the EEOC’s direct review of LTC Partners’ eligibility determination in an individual case. See 5 U.S.C. § 9003(c)(2). Indeed, the EEOC recognized as much in Rouse, Fornaro, and James. But § 9003(c)(2), by its terms, *236 does not directly prohibit review of OPM’s actions under the Program or of any action broader in scope than a determination as to a particular individual’s eligibility for coverage under the LTCSA. Faced with the challenge to its jurisdiction leveled by OPM in Rouse, Fomaro, and James, the EEOC offered a reasoned explanation of its assertion of jurisdiction, highlighting its responsibility to police OPM’s actions under the ADA, 42 U.S.C. § 12112, which it found undisrupted by the LTCSA, 5 U.S.C. § 9003(c)(2), which in turn concerns only eligibility determinations. Under these circumstances, we find that the record does not contain a “strong and clear demonstration” of a violation of a clear, specific and mandatory statutory provision. See Newport News, 633 F.2d at 1081.
B.
Even if we were to reach a contrary conclusion, LTC Partners could not show that the EEOC’s exercise of jurisdiction in Rouse, Fomaro, and James “wholly deprive [d] [LTC Partners] of a meaningful and adequate means of vindicating its statutory rights,” MCorp, 502 U.S. at 43, 112 S.Ct. 459. That is, LTC Partners could not satisfy the second condition for Leedom jurisdiction to lie.
LTC Partners claims the EEOC’s assertion of jurisdiction in proceedings like Fornaro and James threatens to sacrifice or obliterate its statutory right to enjoy limitations on review of its insurability determinations under the LTCSA. See Leedom, 358 U.S. at 190, 79 S.Ct. 180. LTC Partners argues that the EEOC’s action, if left unchecked, would divest LTC Partners of its right under the LTCSA to have its insurability decisions not made the subject of any EEOC proceeding, whether brought against LTC Partners or its contractual partner, OPM. In presenting this argument, LTC Partners analogizes its right to the right of a sovereign to immunity from suit. See R.I. Dep’t of Envtl. Mgmt. v. United States, 304 F.3d 31, 42 (1st Cir.2002) (finding that an adverse immunity determination would “wholly deprive the [state] of a meaningful and adequate means of vindicating its ... rights.”) (omission in original). “Since the state’s sovereign rights encompass more than a mere defense from liability — they include an immunity from being haled before a tribunal by private parties — those rights would be lost without an early and authoritative ruling.” Id. at 43 (citing P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 145, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)).
LTC Partners’ argument is both over-broad and fraught with complications. First, as discussed at length supra, the so-called “immunity” granted to “[a] carrier’s determination as to whether or not a particular individual is eligible to obtain long-term care insurance coverage,” § 9003(c)(2), may or may not also attach to the EEOC’s review of OPM’s participation in a contractual arrangement that has the alleged effect of subjecting federal employees to discrimination. Moreover, LTC Partners’ “immunity” argument suffers from the obvious deficiency that LTC Partners is a private party and not a sovereign entity. This case presents neither the constitutional scope inherent in the sovereign immunity doctrine nor its rationale of shielding the sovereign from “the indignity of [being] subjected] ... to the coercive process of judicial tribunals at the instance of private parties,” In re Ayers, 123 U.S. 443, 505, 8 S.Ct. 164, 31 L.Ed. 216 (1887). LTC Partners’ analogy also fails logically in likening the insulation of an entity (the sovereign) from suit to the insulation of a category of decisions (eligibility determinations) from review. For *237 these reasons, LTC Partners’ claim also fails to satisfy the second requirement for Leedom jurisdiction.[11]
IV.
LTC Partners argues, in the alternative, that the EEOC’s exercise of jurisdiction in Rouse, Fomaro, and James is final agency action under the APA. However, “[q]uestions not raised and properly preserved in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances.” United States v. One 1971 Mercedes Benz, 542 F.2d 912, 915 (4th Cir.1976). LTC Partners concedes that it based its case before the district court solely on Leedom but argues that this narrowness of focus should not limit it on appeal, citing the “change in the complexion of the case” over the course of time. Reply Br. at 18. Specifically, LTC Partners draws our attention to the fact that after Rouse abandoned his EEOC claim, this case no longer concerned an attempt to enjoin the Rouse proceedings but instead shifted to a singular focus on enjoining the EEOC’s exercise of jurisdiction over LTC Partners’ insurability decisions in general.[12]
All of the ingredients for LTC Partners’ generalized claim — that the EEOC acted outside its jurisdiction in hearing Rouse, Fomaro, and James — were presented in LTC Partners’ first amended complaint. J.A. 91 (“EEOC’s action in asserting jurisdiction to review LTC Partners’ insurability decisions and the related proceedings are outside its authority, arbitrary, capricious, an abuse of discretion, and otherwise ... in violation of the [APA][.]”). However, LTC Partners disavowed this claim in the proceedings below, labeling it a “straw-man argument” offered by the government, Pl.’s Opp. Mot. Dismiss at 9, calling discussion of it “beside the point,” id., and acquiescing in the court’s suggestion at the hearing that both parties agreed they were not dealing with a final agency decision, J.A. 182. That LTC Partners chose not to present the APA argument to the district court, instead disclaiming the argument and train-litigation change in strategy cannot alone amount to an exceptional or extraordinary circumstance that might nullify waiver and justify review.[13]
*238 y.
For the foregoing reasons, we affirm the district court’s holding that the Leedom exception to the finality requirement for review of agency action did not apply in this case. The district court’s grant of the government’s motion to dismiss is therefore

AFFIRMED.

. Covered employees are responsible for the entire cost of insurance, unsubsidized by the government. § 9004(a).

. LTC Partners is the only qualified carrier under the LTCSA.

. The Director of Underwriting for LTC Partners described this review as follows: "Should the original underwriting decision be upheld, the applicant may request a second, and final reconsideration review. A senior level/supervisory underwriter or a Medical Director at John Hancock or MetLife reviews that decision. The individuals reviewing the second level reconsideration, while knowledgeable of the underwriting protocols for the [Program], have no involvement with the initial or subsequent denial and act as independent reviewers." J.A. 24-25.

. Rouse's claim did not involve a dispute over medical judgments. Therefore, the second-level review, including review of records by Rouse’s physician and subsequent reconsideration by LTC Partners' underwriting staff, was unavailable in Rouse’s case.

. The underlying substantive questions— whether long-term care insurance is a fringe benefit; whether denial of insurance coverage concerns a term, condition, or privilege of employment; and whether the master contract subjects federal employees to the discrimination prohibited by the ADA — are not before us.

. At the time of oral argument in this case, both Fomaro and James remained pending before OPM.

. LTC Partners also moved to enjoin proceedings in Rouse and sought an order compelling the EEOC to permit LTC Partners to intervene in those proceedings. The district court ultimately granted LTC Partners’ requested permission to intervene. Rouse subsequently abandoned his EEOC claim and sought relief against OPM in federal district court, later adding LTC Partners as a party to that action. Rouse v. Springer, No. 06-2088 (D.D.C. filed Dec. 8, 2006). LTC Partners has not sought to intervene in the ongoing proceedings in Fornaro or James.

. At the district court's behest, LTC Partners then filed a second amended complaint, reasserting its original challenge to EEOC jurisdiction and adding a new claim seeking declaratory judgments (1) that denials of coverage to wheelchair users under the Program did not violate the ADA or any other provision of law, and (2) that LTC Partners’ rejection of Rouse's application was valid and lawful. The court dismissed the new claim as it pertained to the United States for lack of subject matter jurisdiction, concluding there was no indication that LTC Partners and the United States, as contractual partners, maintained adverse interests as to the claim. The dismissal of the new claim in the second amended complaint has not been appealed.

. It is also open to question whether LTC Partners could satisfy the redressibility requirement of Article III standing. Here, LTC Partners sought a declaration from the district court that "the EEOC’fs] assertion of jurisdiction to review insurability decisions made by LTC Partners is void as in excess of EEOC’s statutory jurisdiction and authority,” and a related injunction on the exercise of such jurisdiction. J.A. 94. But the EEOC explicitly acknowledged in Fomaro and James its lack of authority to review insurability decisions. See Fornaro, 2005 WL 3038227, at *2 ("This is not to say that the Commission may overturn a decision strictly concerning an individual's 'insurability.' Such decisions are within the discretion of the insurer and fall within the protective provisions of the ADA for insurance providers set aside by Congress.”). Therefore, unless the EEOC cannot avoid exercising jurisdiction over LTC Partners' insurability decisions when it examines OPM’s participation in the master contract, a favorable decision here would have no effect on the EEOC’s authority to hear cases like Fomaro and James. We analyze this issue in connection with LTC Partners’ Leedom argument, infra Part III.A.

. Though not relevant here, the APA also provides that a court may review agency action made reviewable by statute. § 704.

.LTC Partners also analogizes to the qualified immunity doctrine. This analogy fails for similar reasons. See Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (describing public service-focused rationale for qualified immunity doctrine). Moreover, we note that LTC Partners is actively engaged in defense of the master contract in federal district court. Rouse v. Springer, No. 06-2088 (D.D.C. filed Dec. 8, 2006). We recognize that Rouse does not provide an opportunity for LTC Partners to contest the EEOC's assertion of jurisdiction, and that it therefore will not allow LTC Partners to meaningfully assert its purported right to enjoy limitations on review of its eligibility determinations under the LTCSA. However, LTC Partners’ participation in Rouse, along with the past granting of its request to intervene in the Rouse EEOC proceeding, casts doubt upon any suggestion that the proceedings in Fomaro and James deprive LTC Partners of an adequate forum in which to defend its substantive interests under the master contract.

. This question is kept alive through the ongoing proceedings in Fornaro and James.

. In any event, "final agency action” here would necessarily entail the agency's issuance of a definitive ruling that had some immediate "legal force or practical effect” on LTC Partners other than “the disruptions that accompany any major litigation.” FTC v. Standard Oil Co., 449 U.S. 232, 243, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); see also Eastman Kodak Co. v. Mossinghoff, 704 F.2d 1319, 1322 (4th Cir.1983); Fort Sumter Tours, Inc. v. Andrus, 564 F.2d 1119, 1123 (4th Cir.1977). Both Fort Sumter Tours and Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n, 707 F.2d 1485 (D.C.Cir.1983), the primary cases relied upon by LTC Partners, involved agency deci *238 sions that indisputably had direct and immediate legal force and practical effect on the plaintiffs. Here, as already noted, the immediate impact of the EEOC's jurisdictional decision on LTC Partners is, at best, tenuous. It is difficult to see how EEOC's assertion of jurisdiction over OPM, even with the alleged obliteration of LTC Partners’ statutory right, has any tangible, immediate effect on LTC Partners, aside from the disruptions attending whatever participation is required of it in the EEOC proceedings. The “chilling effect" of the EEOC’s action on LTC Partners' administration of the Program, see Appellant's Br. at 52; Reply Br. at 21, would be too amorphous to carry much weight in an APA analysis.