Charles M. HENDERSON, Regional Director of Region 19 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellee,

v.

INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION LOCAL 50, International Union of Operating Engineers Local 701, Respondents,

International Union of Operating Engineers Local 701, Appellant.

PACIFIC MARITIME ASSOCIATION, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Nos. 26468, 26529.

United States Court of Appeals, Ninth Circuit.

March 14, 1972.

As Amended on Denial of Rehearing April 26, 1972.

Don S. Willner (argued), of Willner, Bennett & Leonard, Portland, Or., for International Union of Operating Engineers Local 701.

Glen Bendixsen (argued), Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D.C., Norman Leonard, of Gladstein, Leonard, Patsey & Andersen, Richard Ernst, San Francisco, Cal., Raymond J. Conboy, Dale B. Cubbison, N.L.R.B., Don W. Willner, Portland, Or., for National Labor Relations Bd.

Richard Ernst, San Francisco, Cal., for Pacific Maritime Assn.

Before CHAMBERS, KOELSCH, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

This case raises issues involving the interrelationship of sections 8(b) (4) (D),[1] 10(k),[2] and 10(l) [3] of the Labor Management Relations Act.

---

1. Section 8(b) (4) (D) of the Act, 29 U.S.C. § 158, reads in part:

   "(b) It shall be an unfair labor practice for a labor organization or its agents—

   \*       \*       \*       \*       \*

   (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

   \*       \*       \*       \*       \*

   (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work."

2. Section 10(k) of the Act, 29 U.S.C. § 160(k), reads:

   "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

3. Section 10(l) of the Act, 29 U.S.C. § 160 (l) reads in part:

   "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b) (7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: \* \* \* In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 158(b) (4) (D) of this title."

A dispute arose between the Longshoremen's union and the Operating Engineers' union as to jurisdiction over the work of operating water-borne cranes loading logs aboard vessels at the port of Astoria, Oregon. The jobs were held by members of the Operating Engineers' union. The Longshoremen's union struck, demanding the work for its members. The employers replaced the operating engineers with longshoremen. The Operating Engineers' union then picketed the employers.

The Operating Engineers' union filed charges under section 8(b) (4) (D) against the Longshoremen's union. The employers filed section 8(b) (4) (D) charges against the Operating Engineers' union. The Board instituted section 10(k) proceedings to resolve the jurisdictional dispute between the two unions. The Board also sought injunctive relief under section 10(*l*) against both unions, and such relief was granted. The Operating Engineers' union appealed. We affirmed. Henderson for and on Behalf of National Labor Relations Board v. International Union of Operating Engineers, Local 701, 420 F.2d 802 (9th Cir. 1969).

The section 10(k) proceeding resulted in a Board decision awarding the disputed work to employees represented by the Operating Engineers' union. The Board held that the Longshoremen's union was "not entitled by means proscribed by Section 8(b) (4) (D) of the Act to force or require the Employers to assign the above work to longshoremen represented by it." 181 N.L.R.B. 315, 317 (1970). The Longshoremen's union was given

ten days to notify the Board whether it would comply. The Longshoremen's union and the employers petitioned the Board for a stay of its decision. The application was denied.

The Longshoremen's union and the employers filed petitions in this court under section 10(f) seeking review of the Board's section 10(k) determination. In an unreported order we dismissed the petitions for lack of jurisdiction, citing NLRB v. International Longshoremen's & Warehousemen's Union, 378 F.2d 33, 35–36 (9th Cir. 1967).

In the meantime, following the Board's section 10(k) award of the work to members of the Operating Engineers' union, the Regional Director dismissed the section 8(b) (4) (D) charges against the Operating Engineers' union, and advised the employers that no complaint would be filed on those charges.[4] Armed with this dismissal, the Operating Engineers' union moved for dissolution of the section 10(*l*) injunction as to it. The district court denied the motion, and the Operating Engineers' union appeals in No. 26,468. An amicus brief was filed on behalf of the employers by the Pacific Maritime Association, an employer association.[5]

The employers also filed a petition (No. 26,529) seeking review of the Regional Director's dismissal of the section 8(b) (4) (D) charges against the Operating Engineers' union, and the Board's refusal to stay its section 10(k) determination awarding the work to members of the Operating Engineers' union. The Board has moved to dismiss the employers' petition on the ground that neither

---

4. Since the Longshoremen's union had not advised the Board that it would comply with the § 10(k) determination, the Regional Director also filed a complaint under § 8(b) (4) (D) against the Longshoremen's union. While these appeals were pending the Board issued its decision and order in the unfair labor practice proceeding against the Longshoremen's union. The Board confirmed the right to the disputed work of the employees represented by the Operating Engineers' union, and held that the Longshore-

men's union had violated § 8(b) (4) (D) by stopping work to force the employers to assign the work to members of that union. 193 N.L.R.B. No. 37 (1971).

5. The Pacific Maritime Association filed briefs on behalf of the employers in both appeals. For the sake of simplicity we describe their position as that of the "employers."

The Longshoremen's union filed an amicus curiae brief in No. 26,468.

of these administrative actions is subject to judicial review.

■ The basic issue we are asked to decide is whether a union whose members are awarded disputed work in a section 10(k) proceeding remains subject to a section 10(l) injunction unless and until the opposing union has voluntarily acceded to the Board's award or the award has been confirmed by judicial review. The Operating Engineers' union insists that when the section 10(k) award is made and section 8(b) (4) (D) charges against the prevailing union are dismissed, the section 10(l) injunction against that union terminates and it may use economic pressure to enforce the section 10(k) award. The employers argue that voluntary compliance or judicial review must precede economic sanctions.

We resolve this central issue in favor of the Operating Engineers' union in light of the Supreme Court's reasoning in Sears, Roebuck & Co. v. Carpet, Linoleum, Soft Tile and Resilient Floor Covering Layers, Local Union, 397 U.S. 655, 90 S.Ct. 1299, 25 L.Ed.2d 637 (1970), and NLRB v. Plasterers' Local Union, 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971)—the latter announced after the submission of these cases for decision in this court.

In Sears the Supreme Court held that a section 10(l) injunction terminates when the Board decides the underlying unfair labor practice charge. The Court rejected the argument that such an injunction "would remain in effect until the Board's order [was] either enforced or denied enforcement by the Court of Appeals." 397 U.S. at 658, 90 S.Ct. at 1301. With respect to a situation like that in this case, the Court said, "[w]here the Board ultimately finds no unfair labor practice, it would clearly be contrary to the policies of the Act to permit a district court injunction to remain in effect pending Court of Appeals review of the District Court's action" (659, 90 S.Ct. at 1301).

The employers argue that Sears is inapplicable to this case. They point out that the charge in Sears was secondary picketing in violation of section 8(b) (4) (B) rather than a jurisdictional strike in violation of section 8(b) (4) (D), and therefore there was no section 10(k) proceeding in Sears. They contend that where the charge is under section 8(b) (4) (D) and section 10(k) is invoked, as here, the "final adjudication of the Board" under section 10(l) is defined by the last sentence of section 10(k). See note 2. Admittedly, there has been neither a voluntary adjustment of the dispute nor compliance with the section 10(k) award in this case. Accordingly, the employers argue, their unfair labor practice charge against the Operating Engineers' union should not have been dismissed, and there has been no lawful "final adjudication by the Board" within the meaning of section 10(l). They conclude that the district court properly refused to vacate the section 10(l) injunction.

The Supreme Court rejected the premises of this argument in NLRB v. Plasterers' Local Union, supra. The Court stated that when the striking union "wins the § 10(k) decision and the employer does not comply, the employer's § 8(b) (4) (D) case evaporates and the charges he filed against the picketing union will be dismissed." 404 U.S. at 127, 92 S.Ct. at 367. This dismissal, the Court noted, "will not be pursuant to the language of § 10(k) directing dismissal upon 'compliance by the parties to the dispute with the decision of the Board' but rather under § 8(b) (4) (D) because the 'employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.'" Id. at 127 n. 19, 92 S.Ct. at 367.

Thus, dismissal of the section 8(b) (4) (D) charge against the Operating Engineers' union was not contingent upon voluntary adjustment of the underlying dispute or compliance with the Board's section 10(k) decision, as the employers contend. Rather, dismissal was required because the employers' dis-

regard of the section 10(k) determination was within the exception to section 8(b) (4) (D), and therefore a strike against the employers was no longer a violation of that section.

Section 10(*l*) was not mentioned in *Plasterers' Local Union,* but the Court's logic and language convinces us that dismissal of the section 8(b) (4) (D) claim against the union prevailing in the section 10(k) proceeding requires termination of any section 10(*l*) injunction against that union, leaving it free to engage in economic coercion to obtain the jobs for its members.

The Court said:

"Neither the employer nor the employees to whom he has assigned the work are legally bound to observe the § 10(k) decision, but both will lose their § 8(b) (4) (D) protection against the picketing which may, as it did here, shut down the job. The employer will be under intense pressure, practically, to conform to the Board's decision. This is the design of the Act; Congress provided no other way to implement the Board's § 10(k) decision." 404 U.S. at 127, 92 S.Ct. at 367.[6]

This language contemplates that the union prevailing in the section 10(k) proceeding shall have the immediate right to picket a noncomplying employer. To preclude such self-help by continuing a section 10(*l*) injunction against the union awarded the disputed work would be inconsistent with the "design of the Act." [7]

Conversely, the section 8(b) (4) (D) charge against the Longshoremen's union remained alive because of their refusal to comply with the work assign-ment award. The section 10(*l*) injunction therefore continued against the Longshoremen's union until the Board's final adjudication of the charges against it. *See* note 4.

This result is also consistent with the statutory purpose of the Act. The principal object of section 10(k) was to settle jurisdictional disputes quickly and permanently by encouraging voluntary settlement or compliance. NLRB v. Radio and Television Broadcast Engineers (CBS), 364 U.S. 573, 576–577, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961); *see* Plasterers Local Union No. 79, Operative Plasterers' and Cement Masons' International Association, A.F.L.–C.I.O. v. NLRB, 142 U.S.App.D.C. 146, 440 F.2d 174, 182–184 (D.C. Cir. 1970), rev'd on other grounds, 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971); NLRB v. United Association of Journeymen, 242 F.2d 722, 725–726 (3d Cir. 1957). *See* 2 Legislative History of the Labor Management Relations Act, 1947, at 983 (1948). There would be little incentive for the Longshoremen's union either to agree to a settlement or comply with the Board's order if its refusal would leave its members in possession of the jobs and the rival union barred from picketing. Under the employers' argument, this delay would continue until the Board completed the section 8(b) (4) (D) proceedings against the Longshoremen's union, a Court of Appeals reviewed the record and entered an enforcement order, and, perhaps, until a contempt proceeding was instituted and completed in the Court of Appeals.

On the other hand, permitting the prevailing Operating Engineers' union to bring economic pressure on the employers while at the same time protect-

---

6. *See also* Atleson, The National Labor Relations Board and Jurisdictional Disputes—The Aftermath of CBS, 53 Geo. L.J. 93, 142–45 (1964); Mann & Husband, Private and Governmental Plans for the Adjustment of Interunion Disputes: Work Assignment Conflict to 1949, 13 Stan.L.Rev. 5, 44–48 (1960); Farmer & Powers, The Role of the National Labor Relations Board in Resolving Jurisdictional Disputes, 46 U.Va.L.Rev. 660, 682–84 (1960).

7. This conclusion may rest in part upon the consideration that the § 10(k) award removes any "reasonable cause to believe [the § 8(b) (4) (D)] charge is true and that a complaint should issue" against the prevailing union, and thereby removes the statutory basis for a § 10(*l*) injunction against that union. *See* note 3.

ing the employers from similar pressure from the Longshoremen's union would encourage the latter to seek an early accommodation. Failing that, it would at least allow the employers to assign the jobs to the employees presumptively entitled to those jobs, free of the threat of coercive section 8(b) (4) (D) reprisals from the Longshoremen's union.

This would serve one of the principal purposes of these provisions, namely, protection of a neutral employer from loss due to conflicting demands by competing unions that the employer is powerless to satisfy. NLRB v. Radio and Television Broadcast Engineers (CBS), *supra*, 364 U.S. at 580–581, 81 S.Ct. 330; Plasterers' Local Union No. 79, Operative Plasterers' and Cement Masons' International Association A.F.L.–C.I.O. v. NLRB, *supra*, 440 F.2d at 183; NLRB v. Local 1291, International Longshoremen's Association, 345 F.2d 4, 10 (3d Cir. 1965). *See* H.R.Rep. No. 245, 80th Cong., 1st Sess. 23–24 (1947); 1 Legislative History of the Labor Management Relations Act, 1947, at 314–15.

To recapitulate, the "final adjudication" of the dispute as to the Operating Engineers' union occurred when the work was awarded to its members in the section 10(k) proceeding; dismissal of the unfair labor practice charges then followed as a matter of course. NLRB v. Plasterers' Union, *supra*, 404 U.S. at 116, 92 S.Ct. 360. The section 10(*l*) injunction ceased to be effective as to that union by the terms of the statute, since there was a "final adjudication *of the Board* with respect to [the] matter." Sears, Roebuck & Co. v. Carpet, Linoleum, Soft Tile and Resilient Floor Covering Layers, Local Union, *supra*, 397 U. S. at 658–659, 90 S.Ct. at 1301. Court of Appeals review was not necessary since the statute refers to final adjudication "of the Board." *Id.* at 658, 90 S. Ct. 1299. The Operating Engineers' union was free to enforce the section 10(k)

award by economic coercion because such pressure would be pursuant to an "order or certification of the Board" and thus not in violation of section 8(b) (4) (D). NLRB v. Plasterers' Local Union, *supra*, 404 U.S. at 127 n. 19, 92 S.Ct. at 367.

The district court therefore erred in denying the motion of the Operating Engineers' union to eliminate that union from the section 10(*l*) injunction. The Board has since decided the section 8(b) (4) (D) proceedings against the Longshoremen's union (*see* note 4). By the terms of the statute, the injunction has expired as to that union as well. *See* Sears, Roebuck & Co. v. Carpet, Linoleum, Soft Tile and Resilient Floor Covering Layers, Local Union, *supra*, 397 U. S. at 657, 90 S.Ct. 1299, 25 L.Ed.2d 637.

■ Turning to No. 26,529, we conclude that we are without jurisdiction to review either the refusal of the Board to stay its section 10(k) determination, or the dismissal of the employers' charges against the Operating Engineers' union.

As noted earlier, this court has dismissed the petition of the employers to review the section 10(k) award for want of jurisdiction on the authority of NLRB v. International Longshoremen's & Warehousemen's Union, 378 F.2d 33, 35–36 (9th Cir. 1967). *See also* NLRB v. Local 991, International Longshoremen's Association, 332 F.2d 66, 70–71 (5th Cir. 1964). Under these authorities the section 10(k) award is an interlocutory order reviewable only in the course of review of any subsequent final order under section 8(b) (4) (D). Thus, to countenance immediate review of an order denying a stay of such a section 10(k) award would doubly offend the deeply entrenched policy against premature and piecemeal appellate proceedings.

The employers urge countervailing considerations in favor of requiring ju-

dicial confirmation of the Board's section 10(k) award before it becomes binding, emphasizing that the Board should not rely on economic sanctions by the prevailing union in the section 10(k) proceeding to enforce the Board's order. Their position, however, cannot withstand the Supreme Court's analysis in *Sears* and *Plasterers' Union,* discussed above.

The employers' effort to obtain review of the dismissal of charges against the Operating Engineers' union must also be rejected.

We held in NLRB v. Lewis, 249 F.2d 832, 838 (9th Cir. 1957), aff'd 357 U.S. 10, 15–16, 78 S.Ct. 1029, 2 L.Ed.2d 1103 (1958), that "[b]y virtue of § 3(d) . . . the General Counsel['s] . . . decision on whether to issue a complaint charging an unfair labor practice is final and is not reviewable by either the Board or the courts." *See also* Department & Specialty Store Employees Union, Local 1265, R.C.I.A., A.F.L.–C.I.O. v. Brown, 284 F.2d 619, 626 (9th Cir. 1960); California Association of Employees v. Building & Construction Trades Council, 178 F.2d 175, 178 n.3 (9th Cir. 1949).[8] The Supreme Court confirmed this view in Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967), stating, "the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint."[9]

In No. 26468 the injunction is vacated as moot. In No. 26529 the petition for review is dismissed for want of jurisdiction.

8. Other Courts of Appeals have adhered to this view. *See, e. g.,* Lincourt v. NLRB, 170 F.2d 306, 307 (1st Cir. 1948); United Elec. Contractors' Ass'n v. Ordman, 366 F.2d 776 (2d Cir. 1966); Contractors' Ass'n of Philadelphia & Eastern Pennsylvania v. NLRB, 295 F.2d 526 (3d Cir. 1961); Wellington Mill Div., West Point Mfg. Co. v. NLRB, 330 F.2d 579, 591 (4th Cir. 1964); NLRB v. Bar-Brook Mfg. Co., 220 F.2d 832, 834 (5th Cir. 1955); Mayer v. Ordman, 391 F.2d 889, 892 (6th Cir. 1968); Balanyi v. Local 1031, I.B.E.W., 374 F.2d 723, 726 (7th Cir. 1967); General Drivers, etc. v. NLRB, 179 F.2d 492, 494–495 (10th Cir. 1950); Hourihan v. NLRB, 91 U.S. App.D.C. 316, 201 F.2d 187, 188 (1952).

9. The principle of nonreviewability of the General Counsel's dismissal of § 8(b) (4) (D) charges applies whether or not the Board has commenced proceedings under § 10(k). *See generally* Manhattan Constr. Co. v. NLRB, 198 F.2d 320, 321–322 (10th Cir. 1952).