**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PACIFIC MARITIME ASSOCIATION,
*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS
BOARD,
*Defendant-Appellant.*

No. 13-35818

D.C. No.
3:12-cv-02179-MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief District Judge, Presiding

Argued and Submitted March 8, 2016
Portland, Oregon

Filed July 8, 2016

Before: Raymond C. Fisher, Marsha S. Berzon,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Labor Law

Reversing the district court's summary judgment in favor of the Pacific Maritime Association, the panel held that the district court lacked subject matter jurisdiction to vacate an interlocutory decision of the National Labor Relations Board issued under § 10(k) of the National Labor Relations Act, which directs the Board to hear and determine disputes concerning unfair labor practice charges.

An employer filed an unfair labor practice charge against a union, and the Board issued a Notice of Hearing under § 10(k). The Board denied a motion to intervene and a motion to quash the Notice of Hearing by the Pacific Maritime Association, a multi-employer association that bargained with the union, and concluded that it had jurisdiction to resolve the unfair labor practice charge.

The Pacific Maritime Association filed an action in district court seeking immediate judicial review of the Board's § 10(k) decision.

The panel held that the *Leedom v. Kyne*, 358 U.S. 184 (1958), exception to the finality requirement for district court jurisdiction did not apply. This exception requires a plaintiff to show both that the Board's action was ultra vires and that absent district court jurisdiction, the party seeking review will be wholly deprived of a meaningful and adequate means of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

vindicating its statutory rights. The panel stated that it was skeptical that the Board's exercise of jurisdiction was proper. Nonetheless, whether or not the Board's decision was ultra vires, the district court lacked jurisdiction because the Pacific Maritime Association had alternative means of challenging the Board's § 10(k) decision. The panel concluded that the Association could seek to intervene in an ongoing unfair labor practice case that arose out of the Board's decision, or it could simply await the Board's final order in that case and then seek judicial review under NLRA § 10(f) as an "aggrieved person."

The panel rejected Pacific Maritime Association's argument that it should affirm on the basis of *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014), which invalidated Board appointments and meant that the Board was acting without a quorum.

---

## COUNSEL

David Hitoshi Mori (argued) and Denis F. Meiners, Attorneys; Kevin P. Flanagan, Supervisory Attorney; Nancy E. Kessler Platt, Deputy Assistant General Counsel; Abby Propis Simms, Assistant General Counsel; Eric G. Moskowitz, Acting Assistant General Counsel; Margery E. Lieber, Associate General Counsel; Jennifer Abruzzo, Deputy General Counsel; Richard F. Griffin, Jr., General Counsel; National Labor Relations Board, Washington, D.C.; for Defendant-Appellant.

Charles I. Cohen (argued), Jonathan C. Fritts, and David R. Broderdorf, Morgan, Lewis & Bockius LLP, Washington,

D.C.; Clifford D. Sethness, Los Angeles, California; for Plaintiff-Appellee.

Michael T. Garone, Schwabe, Williamson & Wyatt, P.C., Portland, Oregon, for Amicus Curiae ICTSI Oregon, Inc.

**OPINION**

BERZON, Circuit Judge:

The National Labor Relations Board ("NLRB" or "the Board") challenges the district court's ruling that it had subject matter jurisdiction to vacate an interlocutory decision of the Board issued under § 10(k) of the National Labor Relations Act ("the Act"). The district court held that jurisdiction was warranted under the rule of *Leedom v. Kyne*, 358 U.S. 184 (1958). We conclude that the district court had no jurisdiction over Pacific Maritime Association's ("PMA") effort to obtain review of a non-final NLRB ruling, as the *Leedom* exception to the finality requirement does not apply. We accordingly reverse.

I.

This case arises out of a longstanding jurisdictional dispute between two unions representing workers at Terminal 6 at the Port of Portland. Some of the work at the Terminal involves loading and unloading refrigerated shipping containers known as "reefers," which are used to ship food and other perishables. Reefers must be plugged in to electrical outlets to maintain proper refrigeration and must be monitored to ensure they are at the correct temperature. Since 1974, the Port, a public entity, has employed members

of the International Brotherhood of Electrical Workers Local 48 ("IBEW") to perform the so-called "reefer work" of plugging in, unplugging, and monitoring the reefers. The IBEW's work at the Port is governed by a collective bargaining agreement between the Port and the District Council of Trade Unions ("District Council"), of which the IBEW is a member.

A different union, the International Longshore and Warehouse Union, Local 8, AFL-CIO ("ILWU"), represents other workers at the terminal. During the mid-2000s, the ILWU began to assert that ILWU-represented workers should perform the reefer work. In 2008 the ILWU filed a series of grievances on this point against the company then operating the Terminal.

In 2011, ICTSI Oregon, Inc. ("ICTSI") entered into a 25-year lease with the Port to take over cargo handling operations at Terminal 6. During the lease negotiations, the Port insisted that work that had long been performed by Port employees under the District Council agreement — including the reefer work at issue — continue to be the Port's responsibility. Accordingly, ICTSI's lease with the Port states that ICTSI acknowledges "that the [District Council] Work is subject to the [District Council]'s jurisdiction under the [District Council] Agreement" and that ICTSI cannot perform "at the Terminal any [District Council] Work." Elsewhere, the lease provides that as long as the District Council agreement is in effect, work covered by that agreement must be performed by District Council employees.

After executing the lease, ICTSI joined the PMA, a multi-employer association that bargains with the ILWU. As a member of the PMA, ICTSI became bound to a multi-

employer collective bargaining agreement known as the Pacific Coast Longshore Contract Document ("Longshore Contract"). Under the terms of the Longshore Contract, reefer work is to be performed by ILWU employees. The ILWU accordingly demanded that ICTSI assign the reefer work to ILWU employees. ICTSI responded that under the terms of its lease, it had no authority to assign or control the reefer work. The ILWU proceeded to file a series of grievances against ICTSI and several PMA-member carriers that call on the Port, alleging that they were in violation of the Longshore Contract by allowing IBEW-represented employees to perform the reefer work. When the IBEW learned of these grievances, it threatened to picket ICTSI if the reefer work was assigned to ILWU employees.

On May 10, 2012, ICTSI filed an unfair labor practice charge against the IBEW with the Board. The charge claimed a violation of § 8(b)(4)(D)[1] of the National Labor Relations Act ("the Act"), which prohibits unions from "threaten[ing], coerc[ing], or restrain[ing]" any person with the object of "forcing or requiring any employer to assign particular work to employees in a particular labor organization . . . rather than to employees in another labor organization . . . ." 29 U.S.C. § 158(b)(4)(ii)(D).

Under § 10(k) of the Act, whenever an unfair labor practice is charged under § 8(b)(4)(D), the Board is directed "to hear and determine the dispute out of which such unfair labor practice shall have arisen." 29 U.S.C. § 160(k). On May 17, 2012, the Board's Region 19 Regional Director issued a Notice of Hearing under § 10(k). On the first day of

---

[1] For ease of reference, we refer to both §§ 8(b)(4)(i)(B) and (D) and §§ 8(b)(4)(ii)(B) and (D) of the Act as §§ 8(b)(4)(B) and (D), respectively.

the hearing, PMA moved to intervene and to quash the Notice of Hearing, but the Regional Director denied the motion, concluding that PMA's interests would be adequately represented by the ILWU. On June 12, 2012, PMA filed a request for special permission from the Board to appeal the denial of its motion to intervene and motion to quash. PMA argued that because the Port, which employs the IBEW workers, is a governmental agency, the IBEW workers are not "employees" within the meaning of the Act; as a result, PMA claimed, there was no violation of § 8(b)(4)(D), which requires a dispute between two groups of statutory "employees," and thus no jurisdiction for the Board to resolve the dispute under § 10(k).

On August 13, 2012, the Board issued a decision awarding the reefer work to the IBEW. Before reaching the merits of the jurisdictional dispute, the Board rejected the ILWU's argument that there was "no violation of Section 8(b)(4)(D) because the dispute concerns the assignment of work by public employer Port to its own employees, who are excluded from coverage by the Act." Citing prior decisions, the Board concluded that, for § 8(b)(4)(D) to be applicable, it need have jurisdiction "only over the employer that is the target of a respondent union's unlawful conduct" — here, ICTSI. In a footnote, the Board also denied PMA's request to appeal the denial of its motion to intervene on the grounds that "PMA has made the same claims as ILWU in arguing that the Board should quash the notice of hearing." PMA subsequently filed a motion for reconsideration of the Board's decision, in which it reiterated its statutory argument. The Board denied this motion.

Before the Board's decision, ICTSI had filed unfair labor practice charges against the ILWU, alleging that it had taken

actions designed to coerce ICTSI into assigning the reefer work to its employees in violation of §§ 8(b)(4)(B) and (D). On August 17, 2012, ICTSI filed additional unfair labor practice charges, alleging that this conduct had continued after and in violation of the Board's § 10(k) decision awarding the work to the IBEW. The Regional Director issued an administrative complaint against the ILWU, and hearings were held in July and August, 2012. PMA did not attempt to intervene in the unfair labor practice proceedings.[2]

On September 7, 2012, PMA filed an action in the District of Oregon seeking immediate judicial review of the Board's § 10(k) decision. PMA argued that the district court had jurisdiction to hear its challenge under *Leedom*, 358 U.S. 184, "because the Board's action is beyond the authority granted to the Board in the NLRA" and "[w]ithout this Court's jurisdiction, PMA would be wholly deprived of any means within its control to remedy the Board's *ultra vires* action." The Board moved to dismiss for lack of jurisdiction.

On June 4, 2013, the district court held a hearing and issued an oral ruling denying the Board's motion to dismiss and granting summary judgment to PMA. Because the district court thought it clear that the Board's decision exceeded its statutory authority, the hearing focused on the second prong of the *Leedom* test — whether there was an alternative means for PMA to vindicate its statutory rights.

---

[2] While the administrative proceeding was underway, the Regional Director sought injunctive relief against the ILWU in the District of Oregon under § 10(l) of the Act. The district court granted an injunction. On appeal, we vacated a portion of the injunction in light of the district court order, at issue in this case, vacating the § 10(k) award. *See Hooks ex rel. NLRB v. Int'l Longshore & Warehouse Union*, 544 F. App'x 657, 659–60 (9th Cir. 2013).

The district court first rejected the Board's argument that PMA must first seek to intervene in the pending unfair labor practice case, concluding that "if it tried to do so, it would get the same answer that it has gotten already" since there was "no reason to believe . . . that the test [for intervention] is somehow more favorable this time around to PMA than it has been in the past." The court then explained that the question whether PMA had an alternative avenue to seek review of its claims turned on whether the Board would issue a "final order" in the pending unfair labor practice case that would allow PMA to seek judicial review as a "person aggrieved" under § 10(f) of the Act, 29 U.S.C. § 160(f). Opining that an event that would precipitate a "final order" was "not within PMA's control," the court held jurisdiction under *Leedom* warranted. The court then granted summary judgment to PMA, vacating the Board's § 10(k) decision. This appeal followed.

The lengthy saga of the underlying dispute continued. On August 28, 2013, the Administrative Law Judge ("ALJ") issued a decision in the ongoing unfair labor practice case against the ILWU. Despite the district court's order, the ALJ concluded that in the absence of a subsequent Board order, he was obligated to follow the Board's § 10(k) decision. He accordingly concluded that the ILWU had violated §§ 8(b)(4)(B) and (D). On February 20, 2014, the Board issued an order "to sever, hold in abeyance, and postpone briefing on the Sec. 8(b)(4)(D) allegations," which are dependent upon the § 10(k) decision, pending this appeal.[3]

---

[3] Later, the Board affirmed the ALJ's finding that the ILWU had violated § 8(b)(4)(B). *Int'l Longshore & Warehouse Union, AFL-CIO*, 363 NLRB No. 12 (2015). An appeal from that decision is now pending

*Int'l Longshore & Warehouse Union, AFL-CIO*, 363 NLRB No. 12 (2015).

## II.

The sole issue on appeal is whether the district court had subject matter jurisdiction to issue its order vacating the Board's § 10(k) decision.

Section 10(f) of the Act provides that "[a]ny person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order" in an appropriate circuit court, or in the D.C. Circuit. 29 U.S.C. § 160(f). A Board decision resolving a jurisdictional dispute under § 10(k) is not a "final order" permitting review under § 10(f). *See Henderson ex rel. NLRB v. Int'l Longshoremen's & Warehousemen's Union Local 50*, 457 F.2d 572, 577 (9th Cir. 1972) (explaining that "the section 10(k) award is an interlocutory order reviewable only in the course of review of any subsequent final order under section 8(b)(4)(D)"). Ordinarily, the § 10(f) procedure is the *only* avenue by which a party may seek judicial review of Board decisions; the courts are otherwise without subject matter jurisdiction. *See Am. Fed'n of Labor v. NLRB*, 308 U.S. 401, 404 (1940); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938). Ordinarily, then, Board § 10(k) determinations are not reviewable decisions.

In *Leedom v. Kyne*, however, the Supreme Court carved out a narrow exception to the rule precluding jurisdiction over Board decisions beyond that provided in § 10(f). In *Leedom*,

---

before the D.C. Circuit. *See Intl. Longshore & Warehouse Union v. NLRB*, No. 15-1344 (D.C. Cir. filed October 1, 2015).

the Board had directed an election in a mixed bargaining unit of both professional and non-professional employees, despite a provision in § 9(b)(1) dictating that it "shall not" do so "unless a majority of such professional employees vote for inclusion in such unit." 29 U.S.C. § 159(b)(1); *see Leedom*, 358 U.S. at 185. In the ordinary case, a decision certifying a bargaining unit, like a § 10(k) decision, is not a final order that can be reviewed under § 10(f). *Am. Fed'n of Labor*, 308 U.S. at 409. The Union nonetheless filed suit in district court, asking the court to set aside the Board's decision.

The Supreme Court held that the district court had jurisdiction. As it explained, two considerations supported its holding. First, the "suit [was] not one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather, it [was] one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Leedom*, 358 U.S. at 188. Second, because, in the ordinary case, only an *employer* can precipitate an unfair labor practice charge, and thus ultimately a reviewable final order, by refusing to bargain after an election, the aggrieved *employees* in this case had "no other means, within their control . . . to protect and enforce" their statutory rights. *Id.* at 190. In other words, "absence of jurisdiction of the federal courts would mean a sacrifice or obliteration of a right which Congress has given professional employees." *Id.* (internal quotation marks omitted).

The exercise of jurisdiction under *Leedom* thus requires a plaintiff to make a two-part showing. *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006). First, the challenged Board action must be ultra vires, i.e., it must contravene

"clear and mandatory" statutory language. *Leedom*, 358 U.S. at 188. And second, absent district court jurisdiction, the party seeking review must be "wholly deprive[d] . . . of a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).

As we will explain below, we conclude that the district court erred in applying *Leedom*'s second prong because PMA had alternative means available to seek review of the Board's § 10(k) decision. Accordingly, while we are skeptical, for the reasons that follow, that the Board's exercise of jurisdiction was proper, we need not and do not resolve the question.

## A. The Board's Statutory Authority Under § 10(k).

Under § 10(k), the Board is "empowered and directed" to resolve jurisdictional disputes "[w]henever it is charged that any person has engaged in an unfair labor practice within the meaning of" § 8(b)(4)(D). 29 U.S.C. § 160(k). Section 8(b)(4)(D), in turn, makes it an unfair labor practice to threaten or coerce any person with the object of "forcing or requiring any employer to assign particular work to employees in a particular labor organization . . . rather than to employees in another labor organization." 29 U.S.C. § 158(b)(4)(D).

"Employee" has a specific definition in the Act. Section 2.3 provides in part that "[t]he term 'employee' shall include any employee . . . but shall not include . . . any individual employed by . . . any other person who is not an employer as herein defined." 29 U.S.C. § 152(3). The statute's definition of "employer," in turn, provides in part that the term "shall not include . . . any State or political subdivision thereof."

29 U.S.C. § 152(2).  Employees of public entities are thus not "employees" within the meaning of the Act.  The parties in this case agree that the Port of Portland is a public entity.

Section 8(b)(4)(D) defines an unfair labor practice only when a union acts with the purpose of forcing "any employer" to assign work to one group of "employees" rather than another group of "employees."  Because employees of state agencies are not employed by statutory "employers" — and thus are not "employees" within the meaning of the Act — § 8(b)(4)(D), on its face, does not apply to conduct arising in the context of a jurisdictional dispute involving state employees.  And because § 8(b)(4)(D) defines and limits the Board's authority to make jurisdictional rulings under § 10(k), it would appear that the Board cannot resolve jurisdictional disputes where one of the disputants is a group of state employees.

The Board asserts that, notwithstanding the apparent reach of the statute, its exercise of jurisdiction was proper. Each of its arguments has flaws.

First, the Board argues that its § 10(k) decision was proper because § 10(k) does not require an "actual finding of the elements of a Section 8(b)(4)(D) violation."  Instead, "the Board's power under § 10(k) depend[s] upon whether there is reasonable cause to believe that § 8(b)(4)(D) has been violated."  *Int'l Tel. & Tel. Corp., Commc'ns Equip. & Sys. Div. v. Local 134, Int'l Bhd. of Elec. Workers* (*ITT*), 419 U.S. 428, 445 n.16 (1975).  We are skeptical that the Board can have "reasonable cause to believe" a violation has taken place where one of the groups involved in the jurisdictional dispute seemingly falls outside the coverage of the Act.

Second, the Board argues that it has "broad discretion in defining what constitutes a jurisdictional dispute warranting resolution under Section 10(k)," and that its determinations are entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). But in reviewing agency statutory interpretations, "[f]irst, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43; *see also United Food & Commercial Workers Union, Local 1036 v. NLRB*, 307 F.3d 760, 766 (9th Cir. 2002). So if, the statutory definition of "employee" represents the "unambiguously expressed intent of Congress," the Board's contrary reading would be entitled to no deference.

Third, the Board asserts that it acted within its discretion in asserting jurisdiction on the basis of the precedent-based argument that it made in the § 10(k) decision itself. There, the Board relied on prior decisions holding that to find a § 8(b)(4)(D) violation, "the Board need have jurisdiction only over the employer that is the target of a respondent union's unlawful conduct." In both the cases the Board relies on, the jurisdictional dispute was, in fact, between two groups of covered employees. *See United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus., Local 195*, 275 NLRB 484 (1985); *Int'l Longshoremen's Ass'n, Local 1911*, 236 NLRB 1439 (1978).

In light of the foregoing, it appears likely that the Board's § 10(k) decision violated the "clear and mandatory" language of the Act. *Leedom*, 358 U.S. at 188. Nonetheless, because we conclude that the district court's exercise of jurisdiction

was improper under *Leedom*'s second prong, we leave it to the Board to render a final decision on its own jurisdiction in the first instance.

## B. The Availability of Alternative Paths to Secure Judicial Review

Whether or not the Board's decision was ultra vires, the district court's exercise of jurisdiction under *Leedom* was improper if PMA had some alternative means to challenge the Board's § 10(k) decision. *See MCorp*, 502 U.S. at 44. The Board argues that PMA has two such means: it could seek to intervene in the ongoing unfair labor practice case that arose out of the Board's decision, or it could simply await the Board's final order in that case, and then seek judicial review under § 10(f) as an "aggrieved person." We agree.

With respect to intervention, the district court reasoned that because PMA had already unsuccessfully attempted to intervene in the § 10(k) proceedings, "if it tried to do so [in the unfair labor practice case], it would get the same answer that it has gotten already." The court's conclusion was based on its understanding of the standards for intervention in a Board case. Because the court found that there was "no reason to believe . . . that the test [for intervention] is somehow more favorable this time around to PMA than it has been in the past," it concluded that a renewed request for intervention would be futile.

The district court's focus on a supposed "test" for intervention was misdirected. Under both the Act and the Board's regulations, the Board and its ALJs are afforded broad discretion in determining requests to intervene. *See* 29 U.S.C. § 160(b) ("In the discretion of the member, agent,

or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony."); 29 C.F.R. § 102.29 ("The regional director or the administrative law judge, as the case may be, may by order permit intervention in person or by counsel or other representative to such extent and upon such terms as he may deem proper."). Contrary to the district court's assumption, therefore, there is no rigid standard for intervention such that PMA, having once failed to surmount it, would necessarily fall short in a subsequent proceeding.

Moreover, there are significant differences between the § 10(k) proceeding in which the Board denied intervention and the ongoing unfair labor practice proceeding. A § 10(k) proceeding has "[s]treamlined procedures" because it results only in "a preliminary administrative determination made for the purpose of attempting to resolve a dispute." *ITT*, 419 U.S. at 440. An unfair labor practice proceeding, by contrast, is a full, adversarial adjudication of whether one party has violated the Act. The Board could thus decide, in its discretion, that intervention is appropriate in the full unfair labor practice proceeding despite having denied intervention in the truncated § 10(k) proceeding. Significantly, the Board has stated (and it informed the district court) that its General Counsel would not oppose an intervention request by PMA in the unfair labor practice case.

Nor would the Board's previous rejection of PMA's statutory argument prevent PMA from renewing that argument upon intervention. "The findings and conclusions in a § 10(k) proceeding are not *res judicata* on the unfair labor practice issue in the later § 8(b)(4)(D) determination." *ITT*, 419 U.S. at 446 (quoting *NLRB v. Plasterers' Local Union No. 79, Operative Plasterers' & Cement Masons' Int'l*

*Ass'n*, 404 U.S. 116, 122 n.10 (1971)); *see also Warehouse Union Local 6, ILWU*, 289 NLRB 1, 2 (1988) (overruling "prior Board cases to the extent they suggest that a respondent in an 8(b)(4)(D) proceeding is not entitled to relitigate factual issues concerning the elements of the 8(b)(4)(D) violation that were raised in an underlying 10(k) proceeding unless it presents new or previously unavailable evidence"). The Board is thus free to revisit in a § 8(b)(4)(D) proceeding issues on which it had previously ruled in a § 10(k) decision. Indeed, reconsideration of § 10(k) rulings appears implicitly to be contemplated by the statutory scheme, given that a § 8(b)(4)(D) proceeding involves a full adversarial adjudication, in contrast with the informal proceedings required under § 10(k).

We therefore conclude that intervention in the unfair labor practice proceeding presented PMA with a viable alternative path to seeking review of the Board's § 10(k) decision. A requirement that PMA attempt to intervene in the unfair labor practice case before seeking *Leedom* jurisdiction is consistent with the doctrine of administrative exhaustion, which, as we have previously noted, "serves two vital purposes: first, to give the agency an initial opportunity to correct its mistakes before courts intervene; and second, to enable the creation of a complete administrative record should judicial review become necessary." *AMERCO v. NLRB*, 458 F.3d 883, 888 (9th Cir. 2006). The district court's decision to assert jurisdiction in this case deprived the agency of an "opportunity to correct its mistakes," although a clear path existed for the agency to do so.

We further agree with the Board that even without intervention, the pending unfair labor practice case gives PMA a "meaningful and adequate" means to seek judicial

review.  Section 10(f) provides that any "person aggrieved" — not "*party* aggrieved" — by a final order of the Board may seek judicial review.  While, in the typical case, a "person aggrieved" usually will have been a party to the Board proceeding, party status is not necessary.  Courts have recognized entities as 'aggrieved persons' even though they were not parties in the underlying administrative proceedings. *See, e.g.*, *Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1005 (6th Cir. 2012).  PMA argues that such cases have been infrequent, but it does not dispute that the Act nowhere *requires* an aggrieved person to have been a party to the underlying proceeding.  The Board thus argues that PMA has as much opportunity to seek judicial review as the ILWU, which is the subject of the Board's § 8(b)(4)(D) proceeding. It can simply wait for the Board to issue its final order in that case, and then seek review under § 10(f), as provided in the statute.

PMA argues that this route is not sufficient.  In *Leedom*, the Court emphasized that the employees seeking review had no adequate means "within their control" to seek judicial review.  358 U.S. at 190.  In this case, PMA argues, its ability to seek review under § 10(f) depends on a contingency that it cannot control, as it can seek review only if the Board issues a final decision finding a violation of § 8(b)(4)(D).  It is not certain that the Board would do so, PMA maintains, because the unfair labor practice proceedings could terminate in a settlement (which PMA would have no ability to control), relieving the Board of the necessity of issuing a final order. In such a case, PMA would not be able to seek review under § 10(f).  Thus, PMA argues its position is equivalent to that of the union in *Leedom*.

Not so.  As discussed above, *Leedom* involved a challenge to a Board decision certifying a bargaining unit before an election.  Like a § 10(k) decision, a certification decision is not a "final order"; it is typically only subject to judicial review to the extent "it may be drawn in question by a petition for enforcement or review of an order, made under § 10(c) of the Act, restraining an unfair labor practice." 358 U.S. at 187.  But as the court below had explained, "review by way of § 10 is too remote and conjectural to be viewed as providing an adequate remedy."  *Leedom v. Kyne*, 249 F.2d 490, 492 (D.C. Cir. 1957).  This remoteness resulted from the circumstance that the union had no way to precipitate an unfair labor practice case that would present the issue and ultimately result in a final order; if the union refused to bargain with the employer, the employer likely would not seek review "since he would then be free to deal with all employees individually."  *Id.*  The problem in *Leedom*, then, was that there was no way for the union to initiate the unfair labor practice case necessary to produce a final order of the Board.

By contrast, in this case, an unfair labor practice proceeding relying on the § 10(k) decision is already underway.  Absent settlement, there *will* be a final order.  Put another way, in *Leedom*, absent district court jurisdiction, the union could only seek review in the extremely unlikely event that the employer filed unfair labor practice charges upon the union's refusal to bargain.  Under the status quo, there would be no avenue for review.  By contrast, in this case PMA will only be *denied* the opportunity to seek review if an unlikely event, i.e. a settlement, *prevents* the Board from issuing the final order that would otherwise follow in due course.

Furthermore, even if the unfair labor practice proceeding did terminate in a settlement, nothing would prevent PMA from *then* seeking a district court order under *Leedom*.  As we have previously explained, there is no basis for expanding the narrow *Leedom* exception "from situations in which judicial review is not available *at all* to situations in which judicial review simply is not available *yet*."  *AMERCO*, 458 F.3d at 890.

Under the PMA's approach, the exception would swallow the rule.  *Any* unfair labor practice case could, hypothetically, end in a settlement without a final order.  If this possibility were enough to support *Leedom* jurisdiction, then any non-party to an unfair labor practice proceeding could immediately seek judicial review of a Board decision without waiting for a final order.

In sum, PMA has adequate alternative means to seek judicial review "within its control": it may seek to intervene in the § 8(b)(4)(D) proceeding, or it may file a petition for review under § 10(f) at the conclusion of that proceeding.  To the extent that PMA lacks control over the issuance of a final order because of the possibility of a settlement, nothing would prevent it from filing a district court action after a settlement is reached.  We therefore conclude that the district court erred in asserting jurisdiction under *Leedom*.

III.

PMA alternatively urges us to affirm on the basis of the Supreme Court's decision in *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014).  There, the Court invalidated three of President Obama's recess appointments to the Board, meaning that the Board had been operating without a quorum

of at least three validly appointed members between January 2012 and August 2013. All Board decisions made during this period are thus invalid under *New Process Steel, L.P. v. NLRB*, 560 U.S. 674 (2010), which held that the Board cannot exercise its powers in the absence of a lawfully appointed quorum. The Board's § 10(k) decision in this case was made during the period affected by *Noel Canning*.

PMA points to a line of cases beginning with *Fay v. Douds*, 172 F.2d 720 (2d Cir. 1949), holding that district courts have jurisdiction to hear constitutional challenges to agency action. Because *Noel Canning* allows PMA to raise such a challenge to the Board's decision, PMA argues that this court may uphold the district court's jurisdiction on this alternate ground. But we have previously explained that like *Leedom* jurisdiction, jurisdiction under *Fay* applies only in "situations in which meaningful judicial review is unavailable." *AMERCO*, 458 F.3d at 889–90. PMA's argument thus fails for the same reason as its *Leedom* argument; it has the opportunity to raise its *Noel Canning* challenge as an intervenor in the § 8(b)(4)(D) case, or if it later files a petition as an aggrieved person under § 10(f).

IV.

The exception to the rule precluding judicial review of interlocutory orders of the Board carved out by *Leedom* is a narrow one. It is well-settled that "[a] federal district court may exercise jurisdiction to review a [Board] order only 'in exceptional circumstances,'" *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1258 (quoting *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1500 (D.C. Cir. 1984)), where a party has *no* feasible means to seek relief from an ultra vires order

of the Board.  Because such means were available to PMA in this case, the district court erred in asserting jurisdiction.

**REVERSED.**